Wolff & Samson pc
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey 07052
973-325-1500
Attorneys for P.F.I., Inc./Northwest Petroleum

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | : | Chapter 11 |
|---|---|---|
| In Re: | : | |
| | : | Case Nos. 09-30759 and 09-30760 |
| CECERE ASSOCIATES, L.L.C., and | : | |
| CECERE REALTY ASSOC., LLC, | : | Hon. Donald H. Steckroth, U.S.B.J. |
| | : | |
| | : | Hearing Date: September 15, 2009, 10:00 a.m. |
| Debtors. | : | (JOINT ADMINISTRATION MOTION PENDING) |

**APPLICATION IN SUPPORT OF CROSS MOTION BY P.F.I., INC./NORTHWEST PETROLEUM FOR (i) RELIEF FROM THE AUTOMATIC STAY, PURSUANT TO 11 U.S.C. §§ 362(D)(1) AND (2); AND (ii) SUCH RELATED RELIEF AS THE COURT DEEMS APPROPRIATE**

**TO:    THE HONORABLE DONALD H. STECKROTH
United States Bankruptcy Judge
United States Bankruptcy Court for the District of New Jersey**

P.F.I., Inc./Northwest Petroleum ("PFI"), by and through its undersigned counsel, in support of its cross motion (to Debtor's Motion, Docket No. 12) for (i) relief from the Automatic Stay, pursuant to 11 U.S.C. §§ 362(d)(1) and (2); and (ii) such related relief as the court deems appropriate (the "Motion"), respectfully represents and alleges:

**PRELIMINARY STATEMENT**

1.    Debtors readily admit they have only two assets of any value: (i) a piece of real estate (the "Property") on which sits a gas station that has been dormant for two years; and (ii) a

1197438.1

pre-petition claim for breach of contract against PFI, for which Debtors seek both affirmative relief and offset against the secured amount of PFI's lien against the Property.

2. The two assets are inextricably related because, just months prior to Debtors' bankruptcy filing, the Chancery Judge in PFI's state court foreclosure action (the "State Action") had conclusively fixed the priority and validity of PFI's second mortgage against the Property, but not the dollar amount - - or extent - - of that lien. PFI submits that about $200,000.00 of the lien is incontestable. Another $500,000.00 relates to the right of PFI to recover lost profits as a "Lost Volume Seller" of gasoline to Debtors under the Uniform Commercial Code. Debtors also contend PFI breached a contract and, as a consequence, destroyed the gas station business, thus precluding any recovery on PFI's debt.

3. The Chancery Judge set that factual dispute for a hearing, which the bankruptcy filing preempted. That determination - - the full extent of PFI's lien and Debtors' alleged contractual offsets - - will establish whether the value of the Property under a proposed sale exceeds the value of all liens on the Property; the amount of PFI's credit bid, if the Property is allowed to be sold in this bankruptcy; and the value, if any, of Debtors' only other asset, a legal cause of action for damages or offset against PFI's claim.

4. Each of those factual and legal determinations concerning Debtors' tort claims, breach of contract claims, and their effect on the extent of PFI's lien may be readily and efficiently decided in the pending State Action. Accordingly, PFI respectfully submits that cause, and Debtors' failure to propose any adequate protection of any secured interests and admission concerning the lack of equity in the Property, provide sufficient legal basis for relief from the automatic stay for PFI to move for Final Judgment in the State Action.

## BACKGROUND

### A.  The Loan Documents.

5.  On July 26, 2004, Associates, Realty, Michael A. Cecere, and his wife, Marina L. Cecere, being indebted to PFI, a corporation of New Jersey, in the sum exceeding $120,000.00, executed to PFI a Promissory Note, Motor Fuel Contract, Recapture Agreement, Lease Agreement, Security Agreement and related documents (the "Loan Documents") to secure that sum, with interest at the rate of 18% per annum, together with all other indebtedness arising under the Loan Documents (the "Debt").

6.  To secure payment of the Debt under the Loan Documents, Realty executed to PFI an Open Ended Mortgage (the "Mortgage") of same date with the Note and Loan Documents and thereby conveyed to PFI in fee the land described in the Mortgage, on the condition that such conveyance should be void if payment should be made according to the terms of the Note and Mortgage. The Mortgage was recorded in the Office of the Morris County Clerk, on July 26, 2004, in Book 17777 of Mortgages for said County on pages 131 et seq. The Mortgage is not a purchase money mortgage.

7.  To secure payment of the Debt under the Loan Documents, Michael A. Cecere, joined by his wife, Marina L. Cecere, executed to PFI a Personal Guaranty of same date, personally guarantying payment of the Note, Mortgage and Debt due under the Loan Documents.

### B.  Future Advances Secured By The Open Ended Mortgage.

8.  Both the Note and Mortgage contained an agreement that, if default was declared, the full amount of all unpaid principal, interest, advances by the mortgagee, costs of

1197438.1

3

collection, attorneys fees, together with all other unpaid interest and other amounts due on the Loan Documents and Mortgage, should become immediately due.

9. Specifically, the Recapture Agreement, one of the Loan Documents referenced above, provides for Future Additional Advances. This provision at Paragraph 1(b) states:

> [n]otwithstanding the foregoing, upon written request of the Purchaser, the Lender at its sole and absolute discretion, may advance a sum or sums in excess of the amount set forth in paragraph 1 (a) (the "Future Additional Advances") and such Future Additional Advances shall be advanced under the same terms and conditions including the payback provision through increased gallonage requirements, as set forth in this document. <u>A revision of the Open Ended Mortgages executed simultaneously with this Recapture Agreement will be unnecessary as any Future Additional Advances loaned to the RETAILER will automatically attach to the Open Ended Mortgages and increase same</u>. (Emphasis supplied).

10. Debtors misrepresent in the Motion, Paragraphs 17, 18, and 19, that the Mortgage secures repayment only of the $ 120,000 Note. To the contrary, the Mortgage in the definition section, Paragraphs F & K, defined the following terms:

> **"The Debt"** means all sums due and owning (sic) under the Motor Fuel Supply Contract dated July 26, **2004,** including any and all PFI Accounts Receivable (as defined in the Motor Fuel Supply Contract), the Recapture Agreement, the Promissory Note, the Security Agreement (the "Security Agreement") and the Loan Agreement as defined above including any Future Additional Advances made pursuant to the Loan Agreement which are merged into this Open Ended Mortgage and shall be secured by same.
>
> **"Merger of Debt"**, shall mean that the sums due and owing under this Open Ended Mortgage shall include the sums paid under the Loan Agreement along with those sums that remain outstanding on the Motor Fuel Supply Contract and any and all sums due and owing under Future Additional Advances, which sums shall collectively be named ("The Debt"). For all purposes herein the Motor Fuel Supply Contract, and/or Recapture Agreement and/or Promissory Note, and /or Loan Agreement and/or Security Agreement and/or this Open Ended Mortgage and/or Guaranty, and/or Loan Documents (as defined below) shall be cross mortgaged and/or cross secured so that a default on one is a default on all

1197438.1

4

and all the sums due and owing under these documents will be accelerated.

**C.  Lost Profits Are Secured By The Open Ended Mortgage.**

11.  Debtors also contend, as a matter of law, that PFI cannot recover lost profits as a "lost volume seller" under New Jersey's Uniform Commercial Code.  <u>See</u>, Motion, ¶ 62.  PFI is confident Debtors are legally estopped from even making that factually intensive argument, since the Motor Fuel Supply Contract-Terms and Condition - at Paragraph 12(e)(ii) - provides for lost profits, overhead expenses, incidental and consequential damages, and damages from unsold gallons of product.  This provision states:

> SELLER may, at SELLER's option also recover damages for lost profits, inclusive of overhead expenses, which SELLER would have obtained except for the failure of the RETAILER to perform the obligations under the Motor Fuel Supply Contract and/or this Recapture Agreement.  In addition to the foregoing, incidental and consequential damages are to be included, including costs and attorneys fees.  **It is specifically understood by and between the parties that the SELLER shall not be obligated to mitigate damages as SELLER is deemed a "Lost Volume Seller", wherein SELLER is deemed to have unlimited purchase sources for third parties over and above the sale to the RETAILER herein; therefore, the failure of RETAILER under this Recapture Agreement to accept the goods shall not cause SELLER to seek out alternate sales.**

**D.  Debtors Are Liable For Attorneys Fees And Interest.**

12.  While the parties litigate – in NJ Superior Court – these issues, Debtors' estates will be liable for accruing interest, attorneys' fees for their own counsel, and legal fees for PFI's counsel. No adequate protection is offered to protect these economic interests. Specifically, the Recapture Agreement, at Paragraphs 7 & 8, contains the following default provision:

> That RETAILER further agrees, that in the event the said Promissory Note (Exhibit "B") is placed in the hands of an attorney for collection, to pay twenty-five percent (25%) attorneys fees on the said principal, legal rate of interest of eighteen percent (18%) per annum or the maximum

1197438.1

5

legal rate, whichever is lower, accruing from the date of said default on the unpaid balance, and all costs associated therewith.  Also, RETAILER agrees that, in the event any installment under said Promissory Note is not paid, credited and/or recaptured when due, as provided for under the terms and conditions herein, all remaining installments and unpaid cash balance shall automatically and at once become due and payable without demand or notice; and it is acknowledged by RETAILER that said Promissory Note has been delivered to SELLER, who acknowledges receipt thereof.

### E. **PFI's Contractual Right Of First Refusal.**

13. The proposed Section 363 sale ignores PFI's contractual right of first refusal, as if treating that valuable right as not existing excuses Debtors' obligation to reconcile a valuable contractual right with the proposed auction process.  The Motor Fuel Supply Contract provides in pertinent part:

> **19. OPTION/RIGHT OF FIRST REFUSAL.**  In addition to the obligations contained in any and all agreements between Seller and Buyer, the Seller shall have the Right of First Refusal to match any bona fide offer accepted by Buyer to purchase, lease and/or other transfer or convey the Buyer's interest in the Service Station and/or the ownership interests in the Limited Liability Company currently known as Route 202 Boonton Shell (formerly Triangle Exxon).
>
> Additionally, the Seller shall have the Right of First Refusal to match any bona fide offer accepted by Buyer to purchase, leased and/or other transfer or convey the Service Station Land Owner's interest in the real property on which the Service Station is located and/or the membership interests in the company known as Cecere Realty Associates, LLC.  The Service Station Land Owner has given its consent as evidenced by its execution of this document.

14. Again, Debtors fail even to propose adequate protection of this economic interest in the Property.

1197438.1

6

### F. The Pending State Action Is The Only Appropriate Forum With Jurisdiction To Litigate Debtors' Pre-Petition Breach of Contract and Tort Claims.

15. On or about December 27, 2007, PFI filed in the Superior Court of New Jersey, Chancery Division (the "State Action"), a Foreclosure Complaint against Associates, Realty and Michael and Marina Cecere (collectively, the "Defendants"). A copy of the Complaint is annexed as Exhibit "A" to the Certification of Michael Gaus, Esq., in Support of P.F.I., Inc./Northwest Petroleum's Objection to Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 for an Order (I) Establishing and Approving Bidding Procedures with Respect to the Sale of Real Property of the Debtors and (II) Approving a Sale Free and Clear of Liens, Claims, Encumbrances and Interests (the "Gaus Cert."), submitted herewith.

16. On or about April 2, 2008, the Defendants filed an Answer to Complaint in Foreclosure. The answer expressly raises (or could have raised) all of Debtors' tort and breach of contract claims. A copy of the Answer is annexed as Exhibit "B" to the Gaus Cert.

17. On or about March 10, 2009, Chancery Court Judge Catherine M. Langlois entered an Order Dismissing Answer As Uncontested, which validated the PFI lien status and allowed for the scheduling of a hearing and additional discovery to litigate Defendants' breach of contract claims, if Defendants contested PFI's application for Final Judgment. A copy the Order is annexed as Exhibit "C" to the Gaus Cert. That hearing was never scheduled because (i) PFI and Debtors commenced negotiations for PFI to purchase the Property; and (ii) Associates and Realty filed for bankruptcy.

18. In the event the Court grants PFI relief from the automatic stay, PFI is prepared to submit its pleadings in support of entry of Final Judgment within ten days of the entry of relief in this case.

19. Debtors concede in their Motion that a determination of whether PFI is a Lost Volume Seller, under the UCC, is a matter of law. <u>See</u>, Motion ¶ 62. Thus, no discovery is needed to address that breach of contract issue, and a hearing in the State Action concerning the extent of PFI's lien may be promptly and efficiently conducted.

## THE RELIEF REQUESTED

20. 11 U.S.C. § 362(d) provides, in pertinent part:

> "(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>     (A) the debtor does not have an equity in such property; and
>     (B) such property is not necessary to an effective reorganization;"

## LEGAL AUTHORITY IN SUPPORT OF RELIEF REQUESTED
### (Reasons To Grant Relief From Stay)

**1. PFI Has Established Ample Cause For Relief From Stay.**

21. Conspicuously absent from the Motion is Debtors' proffer of adequate protection to any of the four lien holders (three mortgages and one tax lien) pending (i) approval of the sale; (ii) confirmation of a plan; or (iii) operation of a risky businesses over the next eight years.

22. The concept of adequate protection is not just essential to Section 363, it is mandatory to comply with the requirements of the Fifth Amendment. See, Louisville Bank v. Radford, 295 U.S. 555, 589 (1935) (the Bankruptcy power, like the other great substantive powers of Congress is subject to the Fifth Amendment). As this Court has noted, "the Congressional purpose of this section [Section 361] is to ensure that the secured creditor receives in value essentially what he bargained for." Explexx Software Corp. v. AGI Software, Inc., 199, B.R. 850, 861 (Bankr. D.N.J. 1995), quoting in part, In re Ram Manufacturing, Inc., 32 B.R. 969, 971 (Bankr. E.D.Pa. 1983).

23. Despite the pending motion for a Section 363 sale, the Debtors have not provided adequate protection to the secured lienholders as they are required to do under Section 363(e). It is the Debtors' burden to prove that adequate protection exists or offer sufficient protection in any manner available. See In re Grant Broadcasting of Phila., Inc., 711 B.R. 376, 386 (Bankr. E.D. Pa. 1987); see also In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994). Debtor has neither offered nor provided any form of adequate protection.

24. In such a circumstance, where adequate protection is not even provided, relief from the automatic stay should be granted pursuant to Section 362(d) for cause. See In re Phila. Consumer Discount Co., 32 B.R. 322, 325 (Bankr. E.D. Pa. 1983); In re Gambler, 21 B.R. 3, 4 (Bankr. E.D. Pa. 1982).

**2. Debtors Admitted Lack of Equity Warrants Relief From Stay.**

25. Exhibit "D" to the Certification of Michael C. Gaus, Esq. establishes that the Debtors concede they have no equity in the Property. Pursuant to Section 362(d), relief from the automatic stay may be granted where equity in the Property is lacking.

26. Without an equity cushion, the sale of the Debtors' Property does not provide the adequate protection required under Section 363(e) to ensure that the secured lienholders will receive payment when the Property is sold. See Grant Broadcasting, 711 B.R. at 386.

27. Where, as here, there is no equity in the Property and the Property is not necessary to an effective reorganization (another element Debtors concede), relief from the automatic stay should be granted so that the creditors may pursue their state court remedies against the collateral. See Swedeland, 16 F.3d 552, 564 (3d Cir. 1994) (granting secured creditor relief from automatic stay to proceed with foreclosure action where there was no equity in property and little likelihood of a successful reorganization).

## CONCLUSION

For each of the reasons set forth above, PFI respectfully requests entry of an order substantially in the form of the order submitted herewith.

**WOLFF & SAMSON PC**
Attorneys for P.F.I., Inc./Northwest Petroleum

By: /s/ Robert E. Nies
Robert E. Nies

Dated: September 8, 2009

1197438.1                           10