UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JL-5525)
J. Alex Kress, Esq. (JK-7189)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
(973) 538-0800
Counsel to the Debtors

In re:

CECERE ASSOCIATES, L.L.C. and CECERE
REALTY ASSOC., LLC,

Debtors.

Chapter 11

Hon. Donald H. Steckroth, U.S.B.J.

Jointly Administered
Bankr. Nos. 09-30759 and 09-30760

**FILED**
JAMES J WALDRON, CLERK

MAY 1 8 2010

U S BANKRUPTCY COURT
NEWARK NJ
BY _____ DEPUTY

## ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE

The relief set forth in paragraphs 1 through 16 on the following pages, numbered two (2) through nine (9), is hereby ORDERED.

May 18, 2010

D. Steckroth
USBJ

| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
|---|---|
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 2 of 12 |

UPON CONSIDERATION of the motion (the "Motion")[1] of the debtors and debtors-in-possession herein, Cecere Associates, L.L.C. and Cecere Realty Assoc., LLC (the "Debtors"), by and through their counsel, Riker, Danzig, Scherer, Hyland & Perretti LLP, for (i) entry of an order pursuant to sections 105 and 363 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") establishing and approving bidding procedures (the "Bidding Procedures") with respect to the sale of the Debtors' real property located at 651 Myrtle Avenue (Block 72.01, Lot 1), Town of Boonton, County of Morris, State of New Jersey (the "Real Property") and certain other assets (together with the Real Property, collectively, the "Sale Assets") free and clear of liens, claims, encumbrances and interests ("Part I of the Motion") and (ii) entry of an order at the hearing (the "Sale Hearing") to approve the sale of the Debtors' real property and certain other assets free and clear of all liens, claims, encumbrances and interests pursuant to Bankruptcy Code § 363 ("Part II of the Motion"); and the Court having granted the relief requested in Part I of the Motion pursuant to the Order Establishing and Approving Bidding Procedures With Respect to the Sale of the Real Property of the Debtors entered on May 3, 2010 (the "Bidding Procedures Order"); and, in accordance with the Bidding Procedures Order, the Debtors having conducted the Auction for the Real Property and the other Sale Assets on May 13, 2010, and it appearing that the bid of D.F.S. Boonton, SPE, LLC, as assignee of the liens and claims of PFI, Inc. (the "Buyer") was increased from its initial bid of

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or Contract, as defined infra, as applicable. The Motion was docketed in the proceedings of Cecere Associates, L.L.C. as Dkt No. 12 and in the proceedings of Cecere Realty Assoc., L.L.C. as Dkt. No. 12.

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 3 of 12 |

$875,000.00 to the amount of $1,025,000.00, which bid represented the highest or otherwise best offer received by the Debtors for the Sale Assets to be sold, and the bid of Manjit Singh and Ravinder Kaur in the amount of $1,000,000.00 was established as the back-up bid for the Sale Assets(the "Back-Up-Bid"); and the Court having considered the relief requested in Part II of the Motion and the opposition to Part II of the Motion, if any; and the Court having determined that the legal and factual bases set forth in Part II of the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interest of the Debtors and the Debtors' estates; and upon the record of the Sale Hearing, including, without limitation, the reasons set forth by the Court in the record as to why approval of the sale of the Sale Assets is in the best interest of the Debtors and the Debtors' estates; and after due deliberation and sufficient cause appearing therefore;

THE COURT HEREBY FINDS AND DETERMINES[2] that:

A.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157. Venue of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    As evidenced by the certificates of service and affidavits of publication filed with the Court and based on the representation of counsel at the Sale Hearing: (i) proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with Bankruptcy Code § 363, Bankruptcy Rules 2002, 6004, 9007 and 9014 and the Bidding Procedures Order, (ii) such notice was good, sufficient and appropriate under the

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 4 of 12 |

particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing or entry of this Order shall be required.

C.     As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Sale Hearing, (ii) the representations of counsel made on the record at the Sale Hearing, and (iii) the record of this case and all prior proceedings in this case before the Court, the Debtors have marketed the Real Property and the other Sale Assets and conducted the sale process in accordance with the Bidding Procedures Order.

D.     Buyer's bid for the purchase of the Sale Assets is the highest or otherwise best offer received for the Sale Assets to be sold and the Contract shall be deemed amended to reflect the increased purchase price of $1,025,000.00.  Upon execution at Closing of the Sale Assets of an appropriate assignment, Buyer shall (i) be entitled to assert and get the benefit of the PFI Credit Bid, pursuant to Bankruptcy Code § 363(k), approved by this Court; and (ii) have all rights and privileges of PFI, Inc. with respect to the purchase of the Sale Assets.  The purchase price to be paid by the Buyer pursuant to the Contract[3] is fair consideration and constitutes reasonable equivalent value for the Sale Assets, as determined by the marketing and Bidding Procedures.

E.     Buyer is a purchaser in good faith, as that term is used in Bankruptcy Code § 363(m), with respect to the Sale Assets.  Buyer is not an insider of Debtors, as that term is defined in § 101 of the Bankruptcy Code.  The Contract was entered into by the parties in good

---

[3] The term "Contract" refers to the document entitled "Agreement of Sale" dated as of April 23, 2010, between the Debtors and the Buyer, as assignee of PFI, Inc., concerning the sale of the Real Property and the other Sale Assets, as modified by the increase of the Purchase Price to $1,025,000.00 at the auction, a copy of which, (excluding certain voluminous exhibits) is annexed hereto as Exhibit A.

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 5 of 12 |

faith, from arms'-length bargaining positions and without collusion; therefore, Buyer is entitled to the protections of Bankruptcy Code § 363(m) with respect to the Sale Assets. Neither the Debtors nor Buyer have engaged in any conduct that would cause or permit the Contract to be voided, or for the imposition of costs and damages, under Bankruptcy Code § 363(n).

F.     The Debtor has articulated sound business reasons for consummating the Contract and for selling the Sale Assets, and it is a reasonable exercise of the Debtors' business judgment to consummate the Contract.

G.     The Debtors may sell the Sale Assets to Buyer free and clear of all Liens and Claims (hereinafter defined collectively) in accordance with, and to the extent permitted by, Bankruptcy Code § 363(f) and except as set forth in the Contract. As a condition of purchasing the Sale Assets, Buyer requires the Sale Assets be sold free and clear of all Liens and Claims, except those that may be explicitly and expressly assumed by Buyer in the Contract.

H.     The Debtors are the sole and lawful owner of the Sale Assets and have the full corporate power and authority to transfer the Sale Assets to Buyer. Accordingly, the transfer of the Sale Assets to Buyer is or will be a legal, valid and effective transfer of the Sale Assets, and will vest Buyer with all rights, title and interest in and to the Sale Assets, free and clear of all Liens and Claims pursuant to and, to the fullest extent permitted by, Bankruptcy Code § 363(f) and all other applicable laws, except with respect to those Liens and Claims explicitly and expressly assumed by Buyer in the Contract.

IT IS HEREBY ORDERED THAT:

1.     The sale of the Sale Assets is hereby AUTHORIZED and APPROVED.

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 6 of 12 |

2. All objections to the Motion and the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included in such objections, are hereby overruled on the merits and denied.

3. Pursuant to Bankruptcy Code § 363(b), the Debtors are hereby authorized to sell and transfer the Sale Assets to Buyer pursuant to and in accordance with the terms and conditions of the Contract and to take all other actions as are necessary to effectuate all of the terms thereof and to consummate the transactions contemplated therein, including, without limitation, such actions as are necessary to execute and deliver all documents referenced in and/or contemplated under the Contract without any further authorization of the Court. Except as otherwise expressly provided in the Contract, title to the Sale Assets shall pass to Buyer at Closing pursuant to, and to the fullest extend permitted by, Bankruptcy Code § 363(f) and all other applicable laws free and clear of any and all liens, security interests, rights of first refusal, encumbrances and claims (including, but not limited to, any "claims" as defined in Bankruptcy Code § 101(5)), reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, and in each case whether secured or

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 7 of 12 |

unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on, or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Liens and Claims"), with any Liens and Claims to attach only to the proceeds of sale with the same priority, validity, force and effect as they existed with respect to the Sale Assets before the Closing Date. At the Closing, from the amounts paid by Buyer, the Debtors shall pay the Tax Sale Certificate No. 08-00008 recorded in Book 21158 at Page 1507 held by U.S. Bank Cust/Sass Muni V ("Sass") with respect to the Real Property and all other outstanding real estate taxes due to the Town of Boonton ("Boonton") with respect to the Real Property and the first mortgage lien of Landmark Services, Inc., as assignee of the liens of Wachovia Bank, N.A. ("Landmark") with respect to the Real Property Mortgage Book 13287 at Page 293 (collectively the "Prior Liens"). Sass and Boonton and Landmark shall retain their liens until they are paid in full as provided herein. The Debtors shall retain all rights and abilities to file an application to surcharge the Prior Liens including pursuant to 11 U.S.C. § 506(c) and, if the Debtors file any such application prior to the Closing, the Debtors shall escrow the proceeds of the sale due to the holder of the Prior Liens subject to such application until resolution of the application with such Prior Liens attaching to such escrow and any such escrow

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 8 of 12 |

surcharge shall not permit any holder of any of the Prior Liens to assert that such Prior Liens have not been discharged with respect to the Sale Assets.

4.    The sale and transfer of the Sale Assets to Buyer pursuant to the Contract constitutes a legal, valid and effective transfer and shall vest Buyer with all right, title and interest of the Debtors in and to the Sale Assets.

5.    This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Contract to resolve any issue or dispute  concerning the interpretation, implementation or enforcement of this Order and the Contract, or the rights and duties of the parties hereunder or thereunder, including without limitation, any issue or dispute concerning the transfer of the Sale Assets free and clear of Liens and Claims.

6.    Upon the Debtors' receipt of the consideration set forth in the Contract at the Closing, each of the creditors of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens and Claims against or in the Sale Assets, if any, as such Liens and Claims may have been recorded or may otherwise exist.

7.    The sale approved by this Order is not subject to avoidance or the imposition of costs and damages pursuant to Bankruptcy Code § 363(n).    The consideration set forth in the Contract to be provided by Buyer in exchange for the Sale Assets shall be deemed to constitute reasonable equivalent value and fair consideration.

8.    The Contract and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 9 of 12 |

by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or the Debtors' estates.

9.    The failure to specifically include any particular provision of the Contract in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the Contract and each and every provision, term and condition thereof be authorized and approved in their entirety.

10.    Each and every federal, state and local governmental agency, recording office or department and all other parties, persons or entities is hereby directed to accept this Order for recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the Sale Assets conveyed to Buyer.

11.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, right of first refusal, or other documents or agreements evidencing Liens and Claims against or in the Sale Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, discharges, cancellations, releases of all Liens and Claims that the person or entity has with respect to the Sale Assets or otherwise, then the Debtors or Buyer is hereby authorized and directed to execute and file such statements, instruments of satisfaction, discharge, cancellations, releases and other documents on behalf of such person or entity with respect to the Sale Assets.  Buyer is hereby authorized to record in the appropriate state and county filing offices this Order, annexed to the Deed of Conveyance, which shall

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 10 of 12 |

act as a discharge, termination, release, cancellation and/or termination of all Liens and Claims.

12.    The provisions of this Order shall be self-executing, and neither the Debtors, Buyer nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Contract. Without in any way limiting the foregoing, Buyer is empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to the sale contemplated by the Contract.

13.    This Order (a) shall be effective as a determination that at Closing, all Liens and Claims of any kind or nature whatsoever existing as to Debtors or the Sale Assets prior to the Closing have been unconditionally released, discharged and terminated, except as otherwise expressly provided herein, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deed, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record

| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
|---|---|
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 11 of 12 |

or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Sale Assets.

14.     Each and every federal, state, and local governmental agency, recording office or department, and all other persons or entities, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Contract, including, without limitation, the recording of this Order.

15.     Buyer shall be entitled to the protection of Bankruptcy Code § 363(m) if this Order or any authorization contained herein is reversed or modified on appeal. The purchase by Buyer of the Sale Assets is a purchase in good faith for fair value within the meaning of Bankruptcy Code § 363(m). Accordingly, the reversal, modification or appeal of the authorization provided herein to consummate the Contract and sale of the Sale Assets shall not affect the validity of the sale to Buyer, unless such authorization is duly stayed pending such appeal before the Closing.

16.     As provided by Bankruptcy Rules 6004(g) and 7062, this Order shall be effective and enforceable immediately upon its entry, and the sale approved by this Order may close immediately upon entry of this Order, notwithstanding any otherwise applicable waiting period.

17.     The provisions of this Order are non-severable and mutually dependent.

18.     This transfer is being made as an integral part of a plan of orderly liquidation that the Debtors intend to propose and confirm subsequent to approval of this sale. Accordingly, the transfer shall be exempt from any applicable realty transfer

| | |
|---|---|
| Debtors: | Cecere Associates, LLC and Cecere Realty Associates, LLC |
| Case Nos.: | 09-30759 and 09-30760 (Joint Administration Motion Pending) |
| Caption of Order: | ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBERANCES AND INTEREST PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE |
| Page: | 12 of 12 |

fees required by law in connection with the recording of the Deed of Conveyance under this sale.

19.    A true copy of this Order shall be served on all parties in interest by regular, first-class mail within seven (7) days of the date hereof.

4042778.4

## AGREEMENT OF SALE

**THIS AGREEMENT OF SALE** (this **"Agreement"**) is made and entered into as of the 23rd day of April, 2010, by and among CECERE REALTY ASSOCIATES, LLC and CECERE ASSOCIATES, LLC, debtors and debtors-in-possession (together, **"Debtor"** or **"Seller"**), in chapter 11 bankruptcy cases bearing case numbers 09-30759 and 09-30760 (DHS) (the "**Case**"), being jointly administered under lead case number 09-30759 (DHS) (the **"Debtors' Estate"**), having an address c/o Riker, Danzig, Scherer, Hyland & Perretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981; and D.F.S. Boonton, SPE, LLC, a New Jersey LLC, located at 706 Route 15 South, Suite 201B, Lake Hopatcong, NJ 07849 (**"Purchaser"**). The Purchaser is entering into this Agreement for the Property (as defined below), located at 651 Myrtle Avenue, Boonton Township, New Jersey.

## W I T N E S S E T H:

In consideration of the covenants and agreements hereinafter contained, the parties hereto agree as follows:

**1.    The Sale.**

1.1    Upon and subject to the terms and conditions of this Agreement, Seller agrees to sell and convey to Purchaser, and Purchaser agrees to purchase from Seller, all that certain parcel of land designated as Lot 1, Block 72.01, and commonly and collectively known as 651 Myrtle Avenue, Boonton, New Jersey (herein the **"Land"**), and the buildings and improvements located thereon (the **"Improvements"**), and all title and interest, if any, of Seller in and to any lands lying in the bed of any street, road or highway, open or proposed, in front of, adjacent to or adjoining the Land, and any riparian rights.   The Land and Improvements are collectively referred to as the **"Property"**.   The Land is more particularly described in Exhibit "1" attached hereto and made a part hereof.   The "Property" includes all of the following:

1.2    All rights, privileges and easements appurtenant to the Property, including, without limitation, all minerals, oil, gas and related substances on the Property; all development rights, air rights, and water rights relating to the Property; and all easements and other appurtenances used in connection with the beneficial use and enjoyment of the Property or existing in favor of the Property and encumbering or affecting other real property. (Enumeration of rights, privileges, easements and appurtenances in this paragraph is not intended to limit the general nature of the sale (as described in this Agreement) of the fee simple ownership of the Property and all appurtenances included or implied by law in such sale).

1.3    All right, title and interest of Seller, if any, in and to the land lying in the bed of any street adjoining the Property to the center line thereof, and to any unpaid award for any taking by condemnation or other damage to the Property.

1.4    All of the right, title and interest of Seller in any tangible and intangible personal property now or hereafter owned by Seller and used in the ownership and operation of the Property including, without limitation, any contract or lease rights, motor fuel in the tanks,

agreements, utility contracts and other rights relating to ownership, use and operation of the Property.

 1.5 The following items are included in the sale price: all fixtures, including but not limited to motor vehicle lifts, air pumps, underground tanks, fuel dispensing pumps and associated apparatus, air conditioning units, heating units, cabinets, attached work tables; air and water reels; air compressor(s); fire extinguisher(s); work bench; utility cabinet(s); stool(s); display(s): air conditioning/heat pump unit(s); sign(s); price sign poster board(s); oil display cart(s); flood light pole(s); flood light(s); area light(s); cash box(es); transaction authorization equipment; cash register(s) – standard and electronic; tire cabinet(s).

 1.6 All right, title and interest of Seller in all underground fuel storage tanks and associated piping.

 1.7 All transferrable rights, privileges, easements, real property, personal property, appurtenances and other items are specifically made subject to the representations and covenants set forth in this Agreement along with all rights reserved to the Purchaser pursuant to the environmental provisions, due diligence provisions and other inspections provisions contained within this Agreement.

## 2. Title.

 At the closing (the "Closing"), the Seller shall convey, subject to an order of the United States Bankruptcy Court for the District of New Jersey, pursuant to 11 U.S.C. § 363 and Federal Rules of Bankruptcy Procedure 6004 and 9014, fee simple title "as is", insurable at regular rates, free of all claims of any nature and description, including without limitation, all liens, claims for successor liability, and encumbrances, but subject to easement and restrictions of record provided same do not materially interfere with the current use of the premises. Purchaser may obtain title through any Title Company licensed to do business in the State of New Jersey.

## 3. Purchase Price.

 3.1 The purchase price for the Property is Eight Hundred Seventy Five Thousand and 00/100 ($875,000.00) Dollars (the **"Purchase Price"**) payable as follows:

 3.2 As a deposit, the sum of ten percent (10%) of the Purchase Price (the **"Deposit"**), shall be paid to Riker, Danzig, Scherer, Hyland & Perretti LLP (**"Escrow Agent"** or **"Escrow Account"**) by certified check or wire transfer upon mutual execution of this Agreement and shall be held in escrow pending the Closing of title hereunder in accordance with Paragraph 25.

 3.3 The balance of the Purchase Price shall be paid to Seller by Purchaser at the Closing by (i) satisfying the prior liens against the Property for real estate taxes (which Seller represents that it has been advised totaled $53,375 as of November 12, 2009) and the lien of Landmark Services, Inc. ("Landmark"), as assignee of Wachovia Bank (which the foreclosure judgment obtained by Landmark on August 7, 2009 provides was $253,738.27 as of August 7, 2009), plus, in each case, any court-allowed interest, attorneys' fees and costs accruing after the

date such amounts are set forth in this clause, through the date of the Closing (collectively, the "Prior Liens"), (ii) releasing the Deposit to the Debtors, (iii) making an additional cash payment of the balance of the Purchase Price (which shall not be less than $37,500.00) to the Debtors by certified or bank check, or by wire transfer of the Purchase Price, together with the release of the Deposit, the "Estate Consideration"), and (iv) releasing all or some portion of liens and claims held by Purchaser against the Property and the Debtors' Estate, pursuant to court orders entered in the Case.[1]   The Estate Consideration shall be in the nature of a carveout and shall be unencumbered.   If Purchaser is the successful bidder neither Purchaser nor any of its predecessors-in-interest shall have any deficiency claim with respect to the Debtors' Estate.

**4.   No Mortgage Contingency.**

This Agreement shall not be contingent upon Purchaser obtaining a mortgage.

**5.   Closing.**

5.1   The Closing shall be held at the offices of Riker, Danzig, Scherer, Hyland & Perretti LLP no later than twenty (20) days after the sale hearing at the United States Bankruptcy Court approving this sale pursuant to 11 U.S.C. § 363(b) and (f) and failing to close within said time period either party may establish a "time of the essence" closing date upon ten (10) days' notice to the other party.

5.2   Until the Closing, Seller will (i) maintain the Property; (ii) keep the Property insured at full replacement value of Property; (iii) comply with all laws applicable to the Property; (iv) not further encumber the Property; (v) not enter into any leases, agreements or service contracts not terminable without penalty upon thirty (30) days' prior notice; and (vi) not remove or alter any improvements unless required by law.

5.3   Conditions Precedent to the Closing: (i) the representations and warranties of Seller in this Agreement are true; (ii) Seller has performed all its covenants under this Agreement; (iii) no litigation has commenced or is pending with respect to the Property, except for the Case and those foreclosure proceedings pending as of the date the Case was filed; (iv) the Property is in substantially the same condition, normal wear and tear excluded; (v) Purchaser's representations in this Agreement are true; and (vi) Bankruptcy Court approval of (a) this Agreement and (b) bidding procedures that require, unless waived by Purchaser in its sole discretion, (i) competing bidders, in order to submit a qualified competing bid, shall enter into and be bound by a written agreement substantially similar to this Agreement (ii) the initial overbid during the auction of the Property shall be no less than $25,000 and, thereafter, shall be $10,000 or such other amount as the Seller, in its sole discretion, deems appropriate; and (iii) the Expense Reimbursement provisions in Paragraph 30 shall have been approved prior to commencement of the auction for the Property.

---

[1] Prior to the Closing, P.F.I., INC. t/a NORTHWEST PETROLEUM ("PFI") shall assign its liens, claims, and rights under court orders in the Case to Purchaser.

## 6.     Transfer of Ownership.

6.1     At the Closing, the Seller will transfer ownership of the Property to the Purchaser, and deliver to Purchaser each of the following, except to the extent that Purchaser, in its sole discretion, shall have waived the right to receive deliver of any such item((s) by delivery to Seller of an express written waiver of the right to receive such item(s), in which case only the items not so waived shall be delivered hereunder.

6.2     The Seller will deliver to Purchaser at the Closing:

A.     A Bargain and Sale Deed with Covenants Against Grantor's Acts, in recordable form, duly executed by Seller, to convey to Purchaser title to the Property together with Seller's Residency Certification and Affidavit of Consideration.

B.     A duly executed Affidavit of Title reasonably required by Purchaser and Purchaser's title insurance company for issuance of a title policy containing enumerated exceptions thereto previously acceptable to Purchaser as "Permitted Encumbrances".

C.     General Assignment and Bill of Sale.

D.     A Bankruptcy Court order in the Case approving the sale of the Property free and clear of all liens, claims and interests of any nature, in a form reasonably acceptable to Purchaser.

E.     Authorizing Resolutions.

F.     A Certification confirming the representations contained in this Agreement.

G.     Such other documents as may reasonably be requested by Purchaser's attorneys or title insurance company in order to complete the transaction as contemplated.

H.     An Affidavit sworn to by Seller stating under penalty of perjury that Seller is not a foreign person as defined in Section 1445 of the Code and stating Seller's United States taxpayer identification number and 1099S.

I.     Any other tax information regarding Seller that the Settlement Agent (as that term is used in Section 6045 of the Code) is required to report to the Internal Revenue Service pursuant to the Code.

J.     Settlement Statement executed by Seller.

6.3     Purchaser will deliver to Seller at the Closing each of the following except to the extent that Seller in its sole discretion, shall have waived the right to receive any such item(s) by delivery to Purchaser of an express written waiver of the right to receive such item(s), in which case only the item(s) not so waived shall be delivered:

A.    The balance of the Purchase Price.

B.    Authorizing Resolutions.

C.    Required tax information.

D.    Settlement Statement signed by Purchaser.

## 7.    **Realty Transfer Fee.**

Seller shall be responsible for taking all necessary action, including to request exemption of the realty transfer fee in the Order approving this sale, to insure the transaction will be exempt from realty transfer fees; provided, however, that, if said fees are determined to apply, Purchaser will pay any and all realty transfer fees due with respect to this conveyance.

## 8.    **Inspection of the Property.**

8.1    Purchaser shall have the right to enter upon the Property at any reasonable time up through the Closing to inspect the Property as permitted under this Agreement (collectively referred to as the "Inspections") and Seller shall permit Purchaser such access to the Property for the purposes of conducting the Inspections. Except for the Environmental Investigation and the Supplemental Environmental Investigation provided for by the Consent Orders between the Debtors and PFI entered on December 21, 2009, and March 16, 2010, in connection with its Inspections, Purchaser shall not perform any invasive or analytical testing at the Property, without the prior written consent of Seller, which consent may be withheld or denied in Seller's sole discretion.    Notwithstanding its right to Inspections, Purchaser deems the Property acceptable and shall take ownership of the Property in its "AS IS" condition. Purchaser shall be entitled to enter on the Property during normal business hours for the purpose of conducting the Inspections. Seller shall have the right, at Seller's expense, to have its representative present for any physical Inspections. All Inspections that Purchaser conducts hereunder shall be conducted at the sole cost and expense of Purchaser. Except as may be otherwise provided for in this Agreement or court orders entered in the Case, Purchaser shall not be entitled to any reimbursement for any amounts expended in connection with its Inspections.

8.2    Purchaser shall keep the Property at all times free and clear of any and all liens arising out of the Inspections and shall not permit any liens arising out of the Inspections to be filed against the Property and if any are filed, Purchaser shall cause any such liens arising out of the Inspections to be discharged within ten (10) days after receiving notice of same.

8.3    Purchaser hereby agrees to indemnify, defend and hold Seller harmless from and against any and all liabilities, losses, claims, demands, costs, expenses (including reasonable attorneys' fees and litigation costs) and judgments of any nature arising or alleged to arise from or in connection with any injury to, or death of, any person or loss or damage to property arising from or in connection with its Inspections. Purchaser also agrees to promptly restore the Property to substantially the same condition it was in immediately prior to performing any

Inspections and to repair promptly any damage to the Property caused by Purchaser , its agents, employees, contractors and consultants. The provisions of this Section 8.3 shall survive any termination of this Agreement.

8.4     Prior to entering onto the Property for any Inspection purposes, Purchaser or its agents shall furnish to Seller evidence satisfactory to Seller that Purchaser or Purchaser's agents entering onto the Property maintain comprehensive general public liability insurance with an insurer authorized to do business in New Jersey with a rating of no less than B in Best's Key Rating Guide (or equivalent), or otherwise approved in writing by Seller, against claims for bodily injury, death and property damage in a single limit amount of not less than One Million Dollars ($1,000,000) with respect to all claims for bodily injury or death and One Million Dollars ($1,000,000) with respect to all claims for property damage, naming Seller as an additional insured.  Purchaser shall endeavor to have the policy of insurance required to be maintained by Purchaser or its agents pursuant hereto to provide that Seller shall be given ten (10) days' prior written notice of the suspension, cancellation, termination, modification, nonrenewal or lapse of such policy or a material change in coverage thereunder.

8.5     Notwithstanding anything contained in this Agreement to the contrary, and regardless of the results of the Inspections, Purchaser shall have no right to terminate this Agreement based upon the results of the Inspections.

## 9.     **Building and Zoning Laws.**

The Seller states to the best of its knowledge that there does not exist any violations of any applicable zoning ordinances, building code or other law.  If any governmental authority requires that certificates of occupancy, certificates of continued occupancy, smoke detector certifications or other inspection or occupancy certificates be obtained in connection with the conveyance of the Property to Purchaser, Purchaser shall, at its cost, apply for and obtain such documents and make any repairs, replacements, alterations and changes to the Property required in connection therewith (the "CO Work"), provided such cost does not exceed $2,500.  If such cost exceeds $2,500, Purchaser shall have the option, exercisable upon ten (10) days prior written notice, to terminate this Agreement.  The Closing Date shall be adjourned during the ten (10) day option period and the Agreement shall automatically terminate at the end of such ten (10) day option period unless Seller agrees, in writing, during the ten (10) day option period, to either: (a) be responsible for all costs in excess of $2,500 or (b) to promptly perform the CO Work.  In the event of such termination, the Deposit, shall be returned to Purchaser, whereupon, except as expressly provided in this Agreement, all rights and obligations of the respective parties hereunder shall be null and void.  Provided that either Purchaser or Seller, as the case may be, is proceeding with reasonable diligence with its obligation to obtain the CO, if any, the Closing Date shall be adjourned for a period not to exceed sixty (60) days if necessary to complete the CO Work.

EXECUTION COPY

**10.    Flood Area.**

The federal and state governments have designated certain areas as "flood areas." If this Property is in a "flood area" the Purchaser may obtain insurance, if necessary.

**11.    Property Lines.**

The Seller states that all buildings, driveways and other improvements on the Property will be within its boundary lines and no improvements on adjoining properties extend across the boundary lines of this Property.

**12.    Ownership.**

The Seller agrees to transfer and the Purchaser agrees to accept title of the Property free of all claims and rights of others, except for:

A.    The rights of utility companies to maintain pipes, poles, cables and wires over, on and under the Property; provided that the buildings and improvements on the Property are not located thereon, and the easements will not adversely affect the use of the Property;

B.    Restrictions of record provided: (a) restrictions are not now violated: (b) restrictions are not violated by the buildings and improvements currently located on the Property or by the use thereof by Purchaser for primary and accessory uses for the operation of a gas station and convenience store; (c) violation of such restrictions will not cause a forfeiture or reversion of title; (d) restrictions do not impair or prohibit alienation or mortgaging of the Property; and (e) restrictions do not require payment or contribution of monies or other affirmative act by Purchaser.

**13.    Assessments for Municipal Improvements.**

Certain municipal improvements such as sidewalks may result in the municipality charging property owners to pay for the improvements. Seller represents that it has no actual knowledge or notice of pending or forthcoming governmental improvements. All unpaid charges (assessments) against the Property for work completed before the Closing will be paid by the Seller at or before the Closing. If the improvement is not completed before the Closing, then only the Purchaser will be responsible. If the improvement is completed but the amount of the charge (assessment) is not determined, the Seller will pay an estimated amount at the Closing. When the amount of the charge is finally determined, the Seller will pay any deficiency to the Purchaser (if the estimate provides to have been too low), or the Purchaser will return any excess to the Seller (if the estimate proves to have been too high).

**14.    Possession and Occupancy.**

At the Closing, the Purchaser will be given possession and occupancy of the subject Property free and clear of all tenants and other occupants.

7

15.    **Parties Liable.**

This Agreement is binding upon all parties who sign it and all who succeed to their rights and responsibilities, including without limitation a trustee appointed either in Chapter 11 or 7 of this case.

16.    **Notices.**

All notices under this Agreement must be in writing.  The notices must be delivered personally or mailed by regular mail, certified mail, return receipt requested to each of the Parties at the addresses set forth above and to the other party's attorney at the address written in this Agreement: J. Alex Kress, Esq., Riker, Danzig, Scherer, Hyland & Perretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 as to Seller, and Robert E. Nies, Esq., Wolff & Samson PC, One Boland Drive, West Orange, NJ 07052, as to Purchaser.

17.    **Seller's Warranties and Representations.**

17.1    The Seller warrants and represents that:

17.1.1 The execution, delivery and performance of this Agreement by Seller and the consummation of the transaction contemplated hereby in the manner contemplated herein will not violate any judgment, order, writ, injunction or decree of any court applicable to Seller or the Property, except that Seller's performance of this Agreement is subject to Bankruptcy Court approval in the Case as provided in Section 29.3.

17.1.2 Seller is not a "foreign person" under the Foreign Investment in Real Property Tax Act of 1980 (**"FIRPTA"**).

17.2    The representations and warranties made by Seller in this Paragraph 17 are true and correct as of the date of this Agreement and shall, to the extent the same remain true, be repeated as of the Closing,  If, for any reason, Seller cannot repeat said representations and warranties as of the Closing, or if Seller is in default hereunder by virtue of a breach of any one or more of the above warranties, then, notwithstanding anything contained herein to the contrary, Purchaser's sole remedy shall be to terminate this Agreement, and receive a refund of the Deposit.

17.3    The representations and warranties set forth in this Paragraph 17 shall merge in the deed and shall not survive of title.

18.    **Physical Condition of the Property.**

The Property is being sold on a strictly "AS IS, WHERE IS" basis, WITH ALL FAULTS.  Neither the Seller nor any of Seller's agents make any claims, representations, warranties, or promises about the condition or the value of the Property included in the sale.

SELLER EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF FITNESS, HABITABILITY, OR MERCHANTABILITY.

**19.** **Merger of All Prior Understandings; Property to be Accepted "AS IS".**

It is understood and agreed that all understandings and agreements heretofore had between Seller and its agents, and Purchaser and its agents, are merged in this Agreement, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation not embodied in this Agreement, made by the other. Purchaser represents that it has inspected the Property to its satisfaction, that it has independently investigated, analyzed and appraised the value and profitability thereof, that it has reviewed all documents referred to herein or in Exhibits annexed hereto (other than those which will not be prepared or available to Purchaser until the Closing), that it is thoroughly acquainted with all of the above and that it agrees to accept the Property "AS IS", and in its present condition, subject to the reasonable use, wear and tear and natural deterioration between the date hereof and the date of the Closing. Purchaser expressly acknowledges that, except as expressly provided herein, neither Seller nor any agent or representative of Seller has made, and Seller is not liable for or bound by in any manner, any express or implied warranties, guarantees, promises, statements, inducements, representations or information pertaining to any document referred to herein or in any Exhibit annexed hereto or the Property or any other matter or thing with respect thereto.

**20.** **No Oral Change; No Assignment.**

This Agreement may not be changed or terminated orally. The stipulations aforesaid are to apply to and bind the legal representatives, successors and assigns of the respective parties, except that Purchaser shall only have the right to assign this Agreement in accordance with Paragraph 31.

**21.** **Title Insurance; Other Closing Expenses.**

21.1 **Seller's Costs.** Seller shall pay, in addition to Seller's apportionments, the cost of its legal counsel and real estate consultant, if any.

21.2 **Purchaser's Costs.** Purchaser shall pay, in addition to the Purchase Price and Purchaser's apportionments, the cost of recording all of the deeds for the Property and, except as otherwise agreed by the Parties or as set forth in court orders in the Case, the cost of its own legal counsel, accountants, engineers, architects and advisors, and its other professionals, plus if applicable the costs of its title commitment, title endorsements or abstract and the title insurance issued pursuant thereto. If the so called "Mansion Tax" for properties located in New Jersey is applicable and this transaction is not exempt pursuant to Federal or State Law, then Purchaser shall have full responsibility to pay said Mansion Tax and Seller shall have no responsibility for same.

## 22.    Governing Law.

This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of New Jersey, and before the courts of the State of New Jersey. Jurisdiction is retained by the United States Bankruptcy Court with respect to all matters arising from this Agreement. The parties agree to submit to the exclusive jurisdiction of the United States Bankruptcy Court.

## 23.    Recording.

This Agreement may not be recorded.

## 24.    Default.

24.1    **By Seller.** In the event the Bankruptcy Court determines that a default by Seller has occurred hereunder, or if Seller is unable to convey title to Purchaser in accordance with this Agreement, Purchaser shall, in its sole discretion, have the option to terminate this Agreement and receive back the Deposit or to seek to compel specific performance. Upon such refund and payment, this Agreement shall be considered cancelled and neither party shall have any further rights against the other.

24.2    **By Purchaser.** In the event the Bankruptcy Court determines that a default by Purchaser has occurred hereunder, the sole remedies of Seller shall be to retain the Deposit as liquidated damages in full or final settlement of all claims between the parties hereto. Under no circumstances shall Seller be entitled to consequential or special damages. This provision shall not limit or impair any of Seller's rights against Purchaser or any of its affiliates under any Orders entered in the Case.

## 25.    Escrow.

25.1    The Deposit shall be held by the Escrow Agent, in trust, on the terms hereinafter set forth:

25.1.1 The Escrow Agent shall deposit the payment made pursuant to Section 3.2 in its non-interest-bearing trust account in a commercial bank in New Jersey as provided in Section 3.2.

25.1.2 The Escrow Agent will deliver the Deposit to Seller or to Purchaser, as the case may be, under the following conditions:

(i)    To Seller on the Closing Date in the event the Closing shall occur pursuant to this Agreement; or

(ii)    To Seller upon receipt of written demand therefor ("**Seller's Demand for Deposit**") stating that Purchaser has defaulted in the performance of Purchaser's obligation to close under this Agreement and the facts and circumstances underlying such default; provided, however, that the Escrow Agent shall not honor such demand until more than ten (10) days after

the Escrow Agent shall have sent a copy of such demand to Purchaser in accordance with the provisions of Paragraph 16 nor thereafter if the Escrow Agent shall have received a "Notice of Objection" (the **"Notice of Objection"**) from Purchaser within such ten (10) day period; or

(iii)     To Purchaser upon receipt of written demand therefor (**"Purchaser's Demand for Deposit"**) stating that this Agreement has been terminated in accordance with the provisions hereof, or that Seller has defaulted in the performance of any of Seller's obligations under this Agreement, and the facts and circumstances underlying the same; provided, however, that the Escrow agent shall not honor such demand until more than ten (10) days after the Escrow Agent shall have sent a copy of such demand to Seller in accordance with the provisions of Paragraph 16 nor thereafter, if the Escrow Agent shall have received a Notice of Objection from Seller within such ten (10) day period.

25.1.3 Within two (2) business days of the receipt by the Escrow Agent of a Seller's Demand for Deposit or a Purchaser's Demand for Deposit the Escrow Agent shall send a copy thereof to the other party and its counsel by certified or registered mail, return receipt requested, and otherwise as provided in Paragraph 16 of this Agreement. The other party shall have the right to object to the delivery of the Deposit by sending written notice (the **"Notice of Objection"**) of such objection to the Escrow Agent by certified or registered mail, return receipt requested, and otherwise as provided in Paragraph 16 of this Agreement which Notice of Objection shall be deemed null and void and ineffective if such Notice of Objection is not received by the Escrow Agent within the time Periods prescribed in Section 25.1.2(ii) or (iii), as applicable. Such notice shall set forth the basis for objecting to the Delivery of the Deposit. Upon receipt of a Notice of Objection, the Escrow Agent shall promptly send a copy thereto to the party who sent the written demand.

25.1.4 In the event the Escrow Agent shall have received the Notice of Objection within the time periods prescribed in Section 25.1.2(ii) or (iii), as applicable, Escrow Agent shall continue to hold the Deposit until (i) the Escrow Agent receives written notice from Seller and Purchaser directing the disbursement of the Deposit, in which case the Escrow Agent shall then disburse the Deposit in accordance with such direction, or (ii) in the event of litigation between Seller and Purchaser, the Escrow Agent shall deliver the Deposit to the clerk of the court in which said litigation is pending, or (iii) the Escrow Agent shall take such affirmative steps as the Escrow Agent may, at the Escrow Agent's option, elect in order to terminate the Escrow Agent's duties; the costs thereof to be borne by whichever of Seller or Purchaser is the losing party.

25.1.5 It is agreed that the duties of the Escrow Agent are only as herein specifically provided, and subject to the provisions of this Paragraph 25, are purely ministerial in nature, and that the Escrow Agent shall incur no liability whatever, except for willful misconduct or gross negligence, as long as the Escrow Agent has acted in good faith. The Seller and Purchaser each release the Escrow Agent from any act done or omitted to be done by the Escrow Agent in good faith in the performance of its duties hereunder.

25.1.6 The Escrow Agent is acting as a stakeholder only with respect to the Deposit. Upon making delivery of the Deposit in the manner herein provided, the Escrow Agent shall have no further liability hereunder.

11

EXECUTION COPY

25.1.7 The Escrow Agent has executed this Agreement in order to confirm that the Escrow Agent will hold the Deposit in escrow, pursuant to the provisions hereof.

25.1.8 Purchaser acknowledges that the Escrow Agent is Seller's counsel and Purchaser acknowledges and agrees that the Escrow Agent may continued to represent Seller in connection with any dispute hereunder.

## 26.    **Risk of Loss: Casualty and Condemnation.**

26.1    Casualty.

Seller is required to insure the Property against casualty or other damage in an amount no less than its full replacement value with an insurance company authorized to do business in New Jersey with a minimum rating of B in Best's Key Rating Guide (or equivalent), or otherwise approved by Purchaser in writing. On the date hereof, Seller shall furnish to Purchaser evidence of its procurement of the insurance required above and shall endeavor to have such policy of insurance provide that Purchaser shall be given no less than ten (10) days advanced written notice of suspension, cancellation, termination, modification, nonrenewal or lapse of such policy or a material change in coverage thereunder. The risk of loss or damage to the Property by fire or otherwise, beyond ordinary wear and tear, shall be upon Seller until the Closing, provided, however:

(a)    Seller shall notify Purchaser as to any casualty or damage to the Property.  In the event that the cost to repair the damage to the Property is in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), Purchaser shall have the option, exercisable in writing within ten (10) days after Purchaser is notified in writing of the occurrence of such casualty, to terminate this Agreement in which event, the Deposit shall be returned to Purchaser, and thereafter neither party shall have any obligation to the other hereunder.  The Closing shall be adjourned for such ten (10) day option period unless Purchaser shall notify Seller that Purchaser waives its option to terminate this Agreement as a result of such damage and desires to proceed immediately to the Closing.

(b)    In the event that the cost to repair the damage to the Property is less than or equal to Seventy-Five Thousand and 00/100 Dollars ($75,000.00), Purchaser shall accept the Property in its then "as is" condition at the Closing (which shall not be delayed as a result of the casualty) and Seller, at the Closing, shall assign to Purchaser its rights to all insurance proceeds as a result of such casualty and shall pay to Purchaser all insurance proceeds received by Seller with respect to such casualty.

(c)    In the event that Purchaser has the right to terminate this Agreement pursuant to Subparagraph (a) hereof and fails to do so within the permitted period (time being of the essence), the parties shall proceed as if the casualty were the type of casualty described in Section 26.1(b) and the Closing shall occur, without any adjustments in the Purchase Price, the later of the day it would have occurred but for the casualty and the day that is five (5) Business Days after the expiration or waiver of the option period by Purchaser and at the Closing Seller

12

shall assign to Purchaser its rights to all insurance proceeds as a result of such casualty and shall pay to Purchaser all insurance proceeds received by Seller with respect to such casualty.

26.2    Condemnation.

(a)    In the event that a permanent public condemnation, eminent domain or other taking proceeding shall be completed, commenced or threatened against the entire Property, or a material portion of the Property, prior to the Closing, this Agreement shall terminate, whereupon the Deposit shall be refunded to Purchaser and the parties shall have no further obligation to each other.

(b)    In the event of a permanent or temporary public condemnation, eminent domain or other taking proceeding of a portion of the Property prior to the Closing, which is not described in Section 26.2(a), Purchaser shall complete the sale without any adjustment to the Purchase Price or other compensation for such condemnation except that any proceeds received by the Seller before the Closing on account thereof shall be paid over to Purchaser at the Closing as a Closing adjustment, and Seller shall transfer and assign to Purchaser at the Closing all of Seller's rights and interests in and to such award and proceeds and any proceeds received by the Seller after the Closing on account thereof shall be paid over to Purchaser as a post-closing adjustment.

(c)    The provisions of this Section 26.2 shall survive the Closing.

## 27.    **Waiver of Environmental Claims.**

27.1    Purchaser is in possession of (i) a Phase I Environmental Site Assessment/Preliminary Assessment dated March 4, 2010, (ii) a Phase II Site Investigation Report dated March 4, 2010, and (iii) a supplemental Phase II Site Investigation Report dated _____ (collectively, the "Environmental Reports"). (Copies of the Environmental Reports are attached as Exhibits A, B & C.) As set forth in Paragraphs 18 and 19 hereof, neither Seller nor any agent or representative of Seller has made, and Seller is not liable for or bound by, in any manner, any express or implied warranties, guarantees, promises, statements, inducements, or representations pertaining to such reports or the environmental condition of the Land or Improvements. Seller has not performed an independent investigation or verification of the information contained in these reports.

27.2    Purchaser agrees to undertake and to assume the liability for the investigation and remediation of the environmental conditions, including but not limited to the underground storage tank systems, any other improvements and the presence of Hazardous Substances, at the Property, and at any location beyond the boundaries of the Property to which Hazardous Substances emanating or that emanated from the Property may have come or hereafter may come to be located, if any (collectively, "**Environmental Conditions**"), in accordance with all applicable federal, state and local laws, rules, ordinances or regulation (the "**Remediation**"). For the purposes of this Agreement, "**Hazardous Substances**" shall mean any material or substance defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials", "extremely hazardous wastes", "restricted hazardous wastes", "toxic

13

substances", "toxic pollutants", "contaminants" or "pollutants", or words of similar import, pursuant to any federal, state or local law, ordinance, code, rule, or regulation, including but not limited to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq., and the federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq. ("CERCLA").

27.3   Purchaser, by paying the consideration for a deed of the Property at the Closing, shall be deemed to release Seller, the Debtors' Estates, the Seller's retained professionals, and Michael and Marina Cecere (collectively, the **"Released Parties"**) from, and to waive as against the Released Parties, all claims of liability for or attributable to Environmental Conditions, including without limitation any claim or lawsuit under any local, state or federal law, rule, ordinance or regulation relating to environmental contamination or other environmental matters. Purchaser shall indemnify and defend Seller and Debtors' Estates for claims or liability arising solely out of Purchaser's failure to complete the Remediation of the Property.

27.4   The provisions of this Paragraph 27 shall survive the Closing under this Agreement.

## 28.   Purchaser's Warranties and Representations.

The Purchaser represents that it has disclosed its true identity and that it has no affiliation with the Seller, except as holder of a second lien on the Land.  Purchaser also represents that it has no personal and/or business relationships with, connections to, and/or understandings and agreements with any of the Debtors or their principals.  Purchaser represents that Purchaser has sufficient cash available to complete the purchase of the Property.

## 29.   Miscellaneous.

29.1   Captions and Headings.   The paragraph and/or section headings and the arrangement of this Agreement are for the convenience of the parties hereto and do not in any way affect, limit, amplify or modify the terms and provisions hereof.

29.2   Singular, Plural, Etc.   Wherever herein the singular number is used the same shall include the plural and the masculine gender shall include the feminine and neuter genders and vice versa, as the contest shall require.

29.3   Bankruptcy Court Approval.   Seller and Purchaser acknowledge that, under the Bankruptcy Code, sale of the Property is, and the respective obligations of Seller and Purchaser under this Agreement are, subject to United States Bankruptcy Court approval and a final, non-appealable Order from the Bankruptcy Court.  Seller and Purchaser acknowledge that to obtain such approval the Seller must demonstrate that it has taken reasonable steps to obtain the highest and best price possible for the Property, including but not limited to, establishing that the Purchaser is a good faith Purchaser, giving notice of the transaction contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court, providing information about the Property to responsible bidders, entertaining higher and better offers from responsible bidders and, if necessary, conducting an auction.

29.4   Counterparts.   This Agreement may be executed in several counterparts, which shall constitute one and the same instrument.

## 30.   **Expense Reimbursement.**

30.1   Termination. (a) This Agreement shall automatically terminate upon the consummation of the closing of an Alternate Transaction (as defined in Section 30.2) and the receipt by Purchaser of the Deposit (together with all interest earned thereon, if any), and Purchaser's Costs (as defined in Section 30.3) in immediately available funds.

(b)(i)   In addition to the foregoing, and notwithstanding anything to the contrary contained in this section or elsewhere in this Agreement, Purchaser shall have the right, at Purchaser's sole election and within 90 days of the entry of this Agreement by both parties, to terminate this Agreement upon written notice to Seller in the event that neither one of the following events has occurred prior to the date of such termination:

(A)   The consummation of the Closing under this Agreement between Seller and Purchaser.

(B)   The consummation of an Alternate Transaction (as defined in Section 30.2) and the receipt by Purchaser of the Deposit (together with all interest earned thereon), and Purchaser's Costs (as defined in Section 30.3) in immediately available funds.

(ii)   Upon a termination of this Agreement by Purchaser, pursuant to clause (b)(i) (A) of this section, the Deposit (together with all interest earned thereon) shall be returned to Purchaser and Seller shall reimburse Purchaser for Purchaser's Costs (as defined in Section 30.3).

30.2   Definition of Alternate Transaction.   The term "Alternate Transaction" is defined as follows:

"Alternate Transaction" means a transaction or the series of related transactions with a party or parties other than Purchaser that occurs after the date hereof and pursuant to which (i) Seller, or any representative of its bankruptcy estate (including, without limitation, a Chapter 11 or Chapter 7 trustee and including Seller as debtor-in-possession or as reorganized pursuant to a Chapter 11 plan), sells, transfers, leases or otherwise disposes of, directly or indirectly, to one or more Persons other than Purchaser, the Property or any portion thereof, or (ii) any Person or affiliated group of Persons other than Purchaser acquires, directly or indirectly, by purchase, or by merger or otherwise, either (A) fifty percent (50%) or more of the aggregate vote or aggregate value of the equity or securities convertible into equity, if any, of Seller (or of any successor of Seller), or (B) the right to control the day-to-

15

EXECUTION COPY

day operations of Seller, and in the case of either of the foregoing clauses (A) or (B), the sale of the Property by Seller to Purchaser pursuant to the terms of this Agreement fails to occur within thirty (30) Business Days after such acquisition (provided that such failure to close is not caused by a default by Purchaser in its obligation to close under this Agreement).

30.3    Definition of Purchaser's Costs.  The term "Purchaser's Costs" is defined as follows:

"Purchaser's Costs" means all out-of-pocket costs actually incurred by Purchaser in connection with this Agreement through the date of the termination of this Agreement, including without limitation all title and survey charges, all due diligence costs, excluding environmental due diligence costs included in any Allowed Secured Claim of Purchaser's assignor in the Case, and all legal fees and expenses, in the amount of $25,000.00.

30.4    Survival.  The provisions of this Article 30 shall survive the termination of this Agreement and the closing of an Alternate Transaction.

## 31.    Successors and Assigns.

This Agreement may not be assigned by Purchaser, except upon the express written consent of Seller, which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, that Purchaser may assign this Agreement to an entity in which Purchaser is a shareholder, affiliate, partner or member, as the case may be; provided, that, Purchaser remains responsible, together with the assignee, for all of Purchaser's obligations under this Agreement and a formal assignment agreement is executed and delivered to Seller, at the Closing, by Purchaser and the assignee assigning the Agreement and acknowledging that assignee and Purchaser remain responsible for the obligations hereunder.  This Agreement shall inure to the benefit of and be binding upon Seller and Purchaser and their respective heirs, personal representatives, successors and assigns.  Any attempted assignment in breach of this Paragraph 31 shall be deemed null, void, and of no force or effect.

## 32.    General Apportionments.

32.1    At the Closing, the following items shall be apportioned for the Property as of 11:59 p.m. on the day preceding the Closing Date:

(a)    Water and sewer charges; and

(b)    Fuel, if any.

32.2    At the Closing, the parties shall jointly execute a closing statement setting forth all adjustments and the basis for same.  All apportionments shall be deemed final and conclusive as of the date of the Closing.

33.   **No Broker.**

Each party hereby represents to the other party that it has not used or engaged any real estate agent, broker, finder or salesperson who would be entitled to a commission on account of this sale.  Each party hereby agrees to indemnify the other party against any claim by any real estate agent, broker, or salesperson for commission where such real estate agent, broker or salesperson claims a commission through dealings with the indemnifying party.  This provision shall survive the Closing.

EXECUTION COPY

### 34.   Further Assurances.

Seller and Purchaser each agree to execute any and all documents necessary to effectuate the purposes of this Agreement.

**IN WITNESS WHEREOF,** the parties have executed this Agreement of Sale as of the date and year first above written.

SELLER:

_____ /s/ _____ Michael Cecere _____
Cecere Realty Associates, LLC, and Cecere
Associates, LLC

PURCHASER:

_____ /s / _____ Chales C. Frears _____
D.F.S. Boonton, SPE, LLC
Charles C. Frears, Managing Agent

The undersigned agrees to act as Escrow Agent in accordance with the above Agreement of Sale.

ESCROW AGENT:

By:   /s/ J. Alex Kress_____
      J. Alex Kress, Member
      Riker, Danzig, Scherer, Hyland &
      Perretti LLP

18

EXECUTION COPY

## Exhibit "1"

**Description of Land**

**(attached)**

Chicago Title Insurance Company

## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the Town of
Boonton, County of Morris, and the State of New Jersey, being more
particularly described as follows:

Beginning at a stake in the southerly side of Myrtle Avenue, where the
same is intersected by the division line between the lands of Van Raalte and
Montville Realty Company, which division line is also an old farm line;
running thence (1) westerly along the southerly line of Myrtle Avenue, south
fifty-five degrees, ten minutes west, three hundred and fifty feet to a stake;
thence (2) south thirty-four degrees fifty minutes east, six feet to a stake at the
foot of the slope of the Morris Canal property; thence (3) north seventy-two
degrees, eight minutes east, one hundred and four and fifty-five hundredths
feet to a stake; thence (4) north seventy-five degrees, thirteen minutes east,
ninety-one and fifty-two hundredths feet to a stake; thence (5) north seventy-
nine degrees, fifty-eight minutes east, one hundred and twelve and forty
hundredths feet to a post; thence (6) along the dividing line between the lands
of Van Realte and Montville Realty Company, north six degrees, thirty
minutes west, one hundred and thirty and seventy hundredths feet to the point
or place of Beginning.

For Information Only: Being known as Lot 1 in Block 72.01 on the
official tax map of the Town of Boonton, County of Morris, New Jersey.
Being also known as 651 Myrtle Avenue, Boonton, New Jersey.

# Exhibit "A"

**Phase I Environmental Site Assessment/Preliminary Assessment**

**(intentionally omitted)**

## Exhibit "C"

**Supplemental Phase II Site Investigation Report**

**(intentionally omitted)**