UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>CECERE ASSOCIATES, L.L.C. and CECERE REALTY ASSOC., LLC,<br><br>                      Debtors. | Chapter 11<br><br> Cases Nos. 09-30759 and 09-30760<br>(Jointly Administered)<br><br>Hon. Donald H. Steckroth, U.S.B.J. |

## FIRST AMENDED PLAN OF LIQUIDATION

Dated: September 21, 2010

RIKER, DANZIG, SCHERER, HYLAND
 & PERRETTI LLP
Joseph L. Schwartz, Esq.  (JS-5525)
J. Alex Kress, Esq. (JK-7189)
Kevin J. Larner, Esq. (KL-8627)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07962
(973) 538-0800

Attorneys for the Debtors

# TABLE OF CONTENTS

ARTICLE I.       INTRODUCTION ................................................................................1

ARTICLE II.      RULES OF INTERPRETATION, COMPUTATION OF TIME AND
                 DEFINED TERMS ............................................................................2
   A.     Rules of Interpretation. ..................................................................2
   B.     Computation of Time. .....................................................................3
   C.     Defined Terms. ................................................................................3

ARTICLE III.     TREATMENT OF UNCLASSIFIED CLAIMS ...........................11
   3.1.   Administrative Expenses. ..............................................................11
   3.2.   Professional Compensation Claims. ..............................................12
   3.3.   Other Administrative Expenses .....................................................12
   3.4.   Priority Tax Claims. ......................................................................12

ARTICLE IV.      CLASSIFICATION OF CLAIMS AND INTERESTS....................13
   4.1.   Class 1 - Priority Non-Tax Claims................................................13
   4.2.   Class 2 - Secured Claims. ..............................................................13
   4.3.   Class 3 - General Unsecured Claims. ............................................14
   4.4.   Class 4 - Insider Unsecured Claims. .............................................14
   4.5.   Class 5 - Equity Interests. .............................................................14

ARTICLE V.       TREATMENT OF CLAIMS.........................................................14
   5.1.   Treatment of Class 1 (Priority Non-Tax Claims). .........................14
   5.2.   Treatment of Class 2 Claims (Secured Claims)............................14
   5.3.   Treatment of Class 3 (General Unsecured Claims). ......................15
   5.4.   Treatment of Class 4 (Insider Unsecured Claims). .......................15
   5.5.   Treatment of Class 5. .....................................................................15

ARTICLE VI.      MEANS OF EXECUTION OF THE PLAN....................................15
   6.1.   Substantive Consolidation .............................................................15
   6.2.   Means of Execution. ......................................................................17
   6.3.   Release of the Debtors' Claims, Rights, Demands and Causes of
                 Action.............................................................................................19
   6.4.   Procedure for Determination of Claims. ........................................19
   6.5.   Treatment of Disputed and Contingent Claims. ............................20
   6.6.   Dissolution of Debtors. ..................................................................21

ARTICLE VII.     TREATMENT OF EXECUTORY CONTRACTS............................21
   7.1.   Rejection of Executory Contracts. .................................................21
   7.2.   Rejection Claims Bar Date.............................................................21

ARTICLE VIII.    MODIFICATION OF THE PLAN ................................................22

ARTICLE IX.      CONDITIONS TO EFFECTIVE DATE .......................................23
   9.1.   Conditions to Occurrence of Effective Date..................................23

## TABLE OF CONTENTS
### (CONTINUED)

ARTICLE X.      RETENTION OF JURISDICTION ...................................................................23

ARTICLE XI.      GENERAL PROVISIONS.............................................................................25
    11.1.   Extension of Payment Dates. ...........................................................25
    11.2.   Notices. ...................................................................................25
    11.3.   Closing of Cases. ..........................................................................25
    11.4.   Interest.....................................................................................26
    11.5.   Confirmation by Non-Acceptance Method......................................26
    11.6.   Vesting. ...................................................................................26
    11.7.   Severability. ...............................................................................26
    11.8.   Governing Law. ...........................................................................27
    11.9.   Reservation of Rights.....................................................................27
    11.10.  Revocation or Withdrawal ...............................................................27
    11.11.  Injunction .................................................................................27
    11.12.  Discharge. .................................................................................28
    11.13.  Exculpation. ...............................................................................28
    11.14.  Successors and Assigns...................................................................29
    11.15.  Payment of Statutory Fees and Filing of Quarterly Reports.................................29

4074512.1

# ARTICLE I

## INTRODUCTION

This first amended plan of liquidation (the "Plan") is proposed by Cecere Associates, L.L.C. and Cecere Realty Assoc., LLC, the within debtors and debtors-in-possession (the "Debtors"), pursuant to section 1121(a) of title 11 of the United States Code, 11 U.S.C. § 1121(a).

Pursuant to prior Orders of this Court, the Debtors have obtained approval of and consummated the sale of substantially all of their assets and satisfied the claims of their secured creditors, other than their former counsel, Porzio Bromberg & Newman, P.C.  Through the Plan, the Debtors propose a substantive consolidation of their bankruptcy estates and an orderly liquidation and distribution of their remaining assets.  The Plan provides that all funds realized from the collection and liquidation of the Debtors' assets will be paid to Creditors on account of their Claims in accordance with the distribution priorities set forth in the Bankruptcy Code.  The Debtors propose to implement the Plan through a Disbursing Agent.  On the Effective Date of the Plan, the Debtors' assets will be transferred to the Disbursing Agent for the benefit of Creditors.  Thereafter, the Disbursing Agent will be responsible for making distributions to Creditors in accordance with the terms of the Plan.  The Debtors shall remain in existence solely for the purposes of liquidating any remaining assets and pursuing claims objections and causes of action as provided in the Plan as they deem to be in the best interest of their bankruptcy estates.

All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement prepared by the Debtors before voting to accept or reject the Plan.  NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY

THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR

REJECTIONS OF THE PLAN.

## ARTICLE II

### RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS

A.    Rules of Interpretation.

For purposes of interpreting the Plan: (i) any reference herein to a contract, instrument,

release, indenture or other agreement or document being a particular form or on particular terms

and conditions means that such document shall be substantially in such form or substantially on

such terms and conditions; (ii) any reference herein to an existing document or exhibit filed, or to

be filed, shall mean such document or exhibit, as it may have been or may be amended, modified

or supplemented from time to time; (iii) unless otherwise specified, all references herein to

articles and sections are references to articles and sections of this Plan; (iv) the words "herein,"

"hereof," and "hereto" refer to this Plan in their entirety rather than to a particular portion of this

Plan; (v) captions and headings to articles and sections are inserted for convenience of reference

only and are not intended to be a part of or to affect the interpretation hereof; (vi) the rules of

construction set forth in Bankruptcy Code § 102 shall apply; (vii) all exhibits to this Plan are

incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when

filed with the Bankruptcy Court; and (viii) whenever a distribution of property is required to be

made on a particular date, the distribution shall be made on such date, or as soon as practicable

thereafter.

4074512.1

B.      Computation of Time.

When computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply.

C.      Defined Terms.

For purposes of this Plan, unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them below.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable.

2.1.    "Actions" means all those certain potential claims, rights and causes of action which the Debtors have or may bring against third parties as of Confirmation and the proceeds thereof.

2.2.    "Administrative Expense" shall mean any cost or expense of administration of the Chapter 11 Cases allowable under Bankruptcy Code § 507(a), including, without limitation, any actual and necessary expenses of preserving the estates of the Debtors, any actual and necessary expense of operating the businesses of the Debtors, any indebtedness or obligation incurred or assumed by the Debtors in connection with the conduct of their businesses or for the acquisition or lease of property or the rendition of services to the Debtors, all allowances of compensation and reimbursement of expenses.

2.3.    "Administrative Expense Deadline" means the deadline for filing Administrative Expense Claims, which shall be ten (10) days after the Confirmation Date.

2.4.    "Allowed" when used as an adjective preceding the words "Claims" or "Equity Interest," shall mean any Claim against or Equity Interests of the Debtors, proof of which was

3

filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of such Claim or Equity Interest against such Debtors, or, if no proof of such Claim or Equity Interest is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

2.5.    "Allowed Administrative Expense" means any Administrative Expense allowed under of the Bankruptcy Code § 507(a)(2).

2.6.    "Allowed Unsecured Claim" means an Unsecured Claim that is or has become an Allowed Claim.

2.7.    "Assets" means each and every item of property and interest of the Debtors or the Estates as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes without limitation: (a) all Cash; (b) all Actions; (c) any other rights, deferred taxes, claims, causes of action or defenses, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; and (d) all of the Debtors' books, records and privileges.

2.8.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code, to the extent applicable to the Chapter 11 Cases.

4074512.1

2.9.    "Bankruptcy Court" means the United States District Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 158, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

2.10.    "Bankruptcy Rules" means the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. § 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

2.11.    "Bar Date" means the deadline established for filing a claim or request for payment.

2.12.    "Business Day" means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

2.13.    "Cash" means cash, bank deposits with, or letters of credit issued by, a bank which the Bankruptcy Court has approved or otherwise recognizes as a creditworthy federal depository, and negotiable instruments which are cashier's checks issued by such a bank or checks certified by such a bank as supported by sufficient collected funds to pay such instruments in full.

2.14.    "Chapter 11 Cases" means the Debtors' bankruptcy cases.

2.15.    "Chapter 11 Professionals" means the Debtors' Professionals wherever they are referred to in the Plan.

2.16.    "Claim" means all claims as such term is defined in Bankruptcy Code § 101(5).

2.17.    "Class" means a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

2.18.    "Confirmation" means the entry of the Confirmation Order.

5

2.19.    "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

2.20.    "Confirmation Hearing" means a hearing conducted before the Bankruptcy Court for the purpose of considering Confirmation of the Plan.

2.21.    "Confirmation Order" means an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.22.    "Creditor" means any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i).    This includes all persons, corporations, partnerships, or business entities holding claims against the Debtors.

2.23.    "Debt" means, refers to and shall have the same meaning ascribed to it in Bankruptcy Code § 101(12).

2.24.    "Debtors" means Cecere Associates, L.L.C. and Cecere Realty Assoc., LLC.

2.25.    "Debtors' Professionals" means Riker Danzig Scherer Hyland Perretti LLP and any other persons employed by the Debtors and to be compensated pursuant to Bankruptcy Code §§ 326, 327 or 1103 during the Chapter 11 Case.

2.26.    "Disallowed" means, with reference to a Claim, a Claim or any portion thereof that has been disallowed or expunged by a Final Order of the Bankruptcy Court or filed after the applicable Bar Date unless such late filing has been authorized by Final Order of the Bankruptcy Court.

2.27.    "Disbursing Agent" means the party appointed by the Bankruptcy Court to hold and distribute the consideration, if any, to be provided to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.    Subject

6

to approval by the Bankruptcy Court, the Debtors have selected Riker Danzig as the Disbursing Agent.

2.28.    "<u>Disclosure Statement</u>" means and refers to the Disclosure Statement filed by the Debtors as required pursuant to Bankruptcy Code § 1125 <u>et seq</u>., along with any restatements, amendments, modifications or additional disclosures, if any, provided by the Debtors to comply with the provisions of the Bankruptcy Code and which has been approved by the Bankruptcy Court.

2.29.    "<u>Disputed</u>" means, with reference to any Claim, any Claim proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent or which is disputed under the Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in accordance with Bankruptcy Code § 502(c) and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order of the Bankruptcy Court.

2.30.    "<u>Distribution Date</u>" means: (a) initially, the first Business Day which is at least fifteen (15) days after the Effective Date or as soon as practical thereafter, (b) thereafter, any interim date(s) that the Disbursing Agent deems appropriate in its discretion based on the amount of the Cash on hand and the amount of General Unsecured Claims that are Allowed at the time, and (c) thereafter, the Final Distribution Date.

2.31.    "<u>Effective Date</u>" means the first Business Day after the last of the following occurs, unless some condition for the occurrence of the Effective Date is waived by the Debtors: (a) the date on which the Confirmation Order is entered by the Bankruptcy Court and (b) satisfaction of all other conditions precedent to the effectiveness of the Plan set forth herein.

4074512.1

2.32.  "Estates" means the bankruptcy estates of the Debtors created under Bankruptcy Code § 541.

2.33.  "Equity Interest" means any membership interest, stock or other ownership interest in either of the Debtors, including any warrants, options, or other rights to purchase any such ownership interest in the Debtors.

2.34.  "Equity Interest Holder" means the holder of an Equity Interest in either of the Debtors.

2.35.  "Executory Contract" means every unexpired lease and other contract that is subject to being assumed or rejected by the Debtors under Bankruptcy Code § 365, pursuant to the Plan or separate motion.

2.36.  "Final Decree" means the decree contemplated by Bankruptcy Rule 3022.

2.37.  "Final Order" means an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

2.38.  "General Unsecured Claim" means every Unsecured Claim against the Debtors (including, but not limited to, every such Claim arising from the rejection of an Executory Contract and every Claim which is the undersecured portion of any Secured Claim), which is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or an Insider Unsecured Claim and which is classified and treated as the Plan provides for Class 4 Claims.

2.39.  "Holder" means the beneficial holder of any Claim.

2.40.    "Impaired" when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest," means that the Plan alters the legal, equitable, or contractual rights of the member of that class.

2.41.    "Insider" means "insider" as defined in Bankruptcy Code § 101(31).

2.42.    "Insider Unsecured Claims" means the subset of Unsecured Claims held by Insiders of the Debtors.

2.43.    "Landmark" means Landmark Services, Inc., as assignee of the Liens and Claims of Wachovia Bank, N.A.

2.44.    "Landmark Mortgage" means the mortgage against the Property from the Debtors to Wachovia Bank, N.A. recorded in Mortgage Book 13287 at Page 293, et seq. in the Office of the Clerk of Morris County, State of New Jersey, which has been assigned to Landmark.

2.45.    "Lien" means "lien" as defined in Bankruptcy Code § 101(37).

2.46.    "Net Sale Proceeds" means the $140,000 in net proceeds received by the Debtors' Estates at the closing of the Sale.

2.47.    "Person" means "person" as defined in Bankruptcy Code § 101(41).

2.48.    "Petition Date" means August 7, 2009, which is the date the Debtors filed voluntary Chapter 11 petitions commencing the Chapter 11 Cases.

2.49.    "PFI" means PFI, Inc., t/a Northwest Petroleum, and its assignee, D.F.S. Boonton, SPE LLC.

2.50.    "Plan" means this Plan of Liquidation dated August 5, 2010, and every restatement, amendment, or modification thereof, if any, approved by the Bankruptcy Court in the Confirmation Order.

2.51.    "Porzio" means Porzio, Bromberg & Newman, P.C.

9

2.52.    "Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim that is entitled to priority in payment under Bankruptcy Code § 507(a).

2.53.    "Priority Tax Claim" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Bankruptcy Code §§ 502(i) and 507(a)(8).

2.54.    "Pro Rata" means the proportion that the amount of any Claim in a particular Class bears to the aggregate amount of all Claims in such Class.

2.55.    "Professional Compensation Claims" mean the Claims of the Chapter 11 Professionals for reimbursement of costs and expenses rendered after the Petition Date and prior to and including the Confirmation Date.

2.56.    "Property" means the real estate owned by the Debtors as of the Petition Date located at 651 Myrtle Avenue (Block 72.01, Lot 1), Town of Boonton, County of Morris, State of New Jersey.

2.57.    "Riker Danzig" means Riker Danzig Scherer Hyland Perretti LLP.

2.58.    "Sale" means the sale of substantially all of the Debtors' Assets to PFI pursuant Bankruptcy Code § 363.

2.59.    "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as such schedules and statement may have been amended, modified, and supplemented from time to time.

2.60.    "Secured Claim" means every Claim or portion thereof which is asserted by the Creditor holding such Claim to be secured by a Lien against any Assets but, pursuant to Bankruptcy Code § 506, only to the extent of the validity, perfection, and enforceability of the

claimed Lien and the value of the interest of the Creditor holding such Claim against such Assets, if any.

2.61.    "Secured Creditor" means every Creditor that holds a Secured Claim in the Chapter 11 Cases.

2.62.    "Secured Real Estate Tax Claims" means every Claim or portion thereof which is asserted by the Creditor holding such Claim to be secured by a Lien against the Property arising from the Debtors' non-payment of real estate taxes but, pursuant to Bankruptcy Code § 506, only to the extent of the validity, perfection, and enforceability of the claimed Lien and the value of the interest of the Creditor holding such Claim against the Property, if any.

2.63.    "Unclassified Claims" means, collectively, those Claims discussed in Article III hereto.

2.64.    "Unsecured Claim" means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

2.65.    "Unsecured Creditor Fund" means the fund for payment of General Unsecured Claims that will be established by the Debtors on or before the Effective Date, which fund shall be funded in the amount of $15,000.00 by the Debtors from the Net Sale Proceeds.

2.66.    "U.S. Trustee" means the Office of the United States Trustee for Region 3.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    Administrative Expenses.

Holders of Allowed Administrative Expenses will receive Cash in an amount agreed to between such Holders and the Debtors, which amount will be each Holder's Pro Rata share of the Net Sale Proceeds remaining after the deduction of the Unsecured Creditor Fund, payment of

11

the Class 2B Secured Claim, and payment of the full amount of the quarterly fees due to the U.S.

Trustee pursuant to 28 U.S.C.§ 1930.  Payment on account of Allowed Administrative Expenses

Claims shall be made on the later of one (1) day after the Administrative Expense Deadline and

three (3) business days after such Administrative Expense has become Allowed or as soon

thereafter as is practicable.

3.2.    Professional Compensation Claims.

Any Person asserting a Professional Compensation Claim shall file a final Fee

Application no later than forty-five (45) days after the Confirmation Date.  A Professional

Compensation Claim shall not become Allowed until approved by a Final Order of the

Bankruptcy Court.  All Professional Compensation Claims shall be paid in accordance with

Section 3.1 of this Plan.

3.3.    Other Administrative Expenses

Any Person asserting an Administrative Expense, other than a Person asserting a

Professional Compensation Claim, shall file a request for payment no later than the

Administrative Expense Deadline.  If no person objects to the request before the twentieth (20th)

day following the Confirmation Date such Administrative Expense shall be deemed to be

Allowed.  All Administrative Expenses shall be paid in accordance with Section 3.1.

3.4.    Priority Tax Claims.

Any Person holding an Allowed Priority Tax Claim shall receive Cash from the

Unsecured Creditor Fund in an amount equal to such Allowed Priority Tax Claim on the later of

(i) the Effective Date or as soon thereafter as reasonably practicable or (ii) seven (7) business

days after the entry of a Final Order Allowing such Priority Tax Claim.

## ARTICLE IV

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS.</u>

Certain Claims are classified under the Plan as stated in this Article IV; <u>provided, however,</u> that a Claim will be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.

4.1.    <u>Class 1 - Priority Non-Tax Claims.</u>

Class 1 shall include all Claims that are Allowed Priority Non-Tax Claims against the Debtors.  Class 1 is unimpaired under the Plan and, therefore, Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

4.2.    <u>Class 2 - Secured Claims.</u>

As is set forth below, Class 2 Secured Claims are broken into two (2) subclasses for purposes of the Plan:

(a)    <u>Class 2A</u>.  Class 2A shall include all Claims that are Allowed Secured Claims that were paid by the Debtors from the proceeds of the Sale, including, but not limited to, the Secured Claims of Landmark, PFI and all Allowed Secured Real Estate Tax Claims.  Class 2A is unimpaired under the Plan, and the Holders of Class 2A Claims are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

(b)    <u>Class 2B</u>.  Class 2B shall include the Allowed Secured Claim of Porzio.  Class 2B is impaired under the Plan, and Holders of Class 2B Claims are entitled to Vote to accept or reject the Plan.

4074512.1

4.3.    <u>Class 3 - General Unsecured Claims.</u>

Class 3 shall include all Claims that are Allowed General Unsecured Claims against the Debtors.  Class 3 is impaired under the Plan and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

4.4.    <u>Class 4 - Insider Unsecured Claims.</u>

Class 4 shall include all Claims that are Allowed Insider Unsecured Claims against the Debtors.  Class 4 is impaired and will receive no distributions under the Plan and, therefore, is conclusively deemed to have rejected the Plan.

4.5.    <u>Class 5 - Equity Interests.</u>

Class 5 is impaired and will receive no distributions under the Plan and, therefore, is conclusively deemed to have rejected the Plan.

# ARTICLE V

# <u>TREATMENT OF CLAIMS</u>

5.1.    <u>Treatment of Class 1 (Priority Non-Tax Claims).</u>

Each Holder of an Allowed Class 1 Priority Non-Tax Claim, if any, will receive Cash from the Unsecured Creditor Fund in an amount equal to such Allowed Class 1 Priority Non-Tax Claim on the later of (i) the Effective Date, or as soon thereafter as reasonably practicable and (ii) seven (7) business days after the entry of a Final Order Allowing such Class 1 Priority Non-Tax Claim.

5.2.    <u>Treatment of Class 2 Claims (Secured Claims).</u>

(a)    <u>Class 2A Claims.</u>  Each Holder of an Allowed Class 2A Claim, if any, has received, from the proceeds of the Sale, Cash in an amount equal to such Allowed Class 2 Claim, if any.

14

(b)   Class 2B Claims.   The Class 2B Claim shall be Allowed and fixed in the amount of $50,000 pursuant to this Plan.   On the Effective Date, or as soon thereafter as is practicable, the Holder of the Allowed Class 2B Claim shall be paid $20,000 from the Net Sale Proceeds in full satisfaction of its Allowed Class 2B Claim.

5.3.   Treatment of Class 3 (General Unsecured Claims).

Each Holder of an Allowed Class 3 General Unsecured Claim, will receive its Pro Rata share of the remaining portion of the Unsecured Creditor Fund after payment of Allowed Priority Tax Claims and Allowed Class 1 Claims on the Distribution Date or Dates.

5.4.   Treatment of Class 4 (Insider Unsecured Claims).

Each Holder of an Allowed Class 4 Insider Unsecured Claim shall waive all their rights to share in any distributions under the Plan and shall receive no distributions under the Plan.

5.5.   Treatment of Class 5.

The Claims of Class 5, which are the membership interests in the Debtors, are impaired. No interest will be retained by this Class.  Class 5 shall not receive any distributions under the Plan.

## ARTICLE VI

## MEANS OF EXECUTION OF THE PLAN

6.1.   Substantive Consolidation

(a)   Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code §§ 105(a), 541, 1123 and 1129, effective as of the Effective Date, of the substantive consolidation of the Debtors for all purposes, including voting, confirmation, and distribution.  On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) no distributions shall be made under the Plan on account

15

of any Claim held by a Debtor against any other Debtor, (iii) no distributions shall be made under the Plan on account of any Equity Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors, shall be one obligation of the substantively consolidated Debtors.

(b)    The substantive consolidation effected pursuant to Section 6.1(a) of the Plan shall not affect, without limitation, (i) defenses to any Cause of Action or requirements for any third party to establish mutuality in order to assert a right of setoff, or (ii) distributions out of any insurance policies or proceeds of such policies.

(c)    The Disclosure Statement and this Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the substantive consolidation provided for in this Plan.  Unless an objection to the proposed substantive consolidation is made in writing by any creditor purportedly affected by such substantive consolidation on or before the deadline to object to confirmation of this Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation proposed by this Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.  In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

(d)    In the event the Bankruptcy Court determines that substantive consolidation of the Debtors is not appropriate, the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and the treatment of and distribution to the different Classes under the Plan on a debtor-by-debtor basis.

6.2.    Means of Execution.

(a)    Disbursing Agent and Disbursing Agent Reserve.  The Disbursing Agent shall be appointed for the purpose of receipt and distribution of all funds required to be disbursed to Holders of Allowed Claims.

(b)    Transfer of Assets.  Pursuant to the Confirmation Order, any and all funds currently held by the Debtors or on the Debtors' behalf shall be irrevocably transferred and assigned to the Disbursing Agent.  The Estates' title to the Assets will pass to the Disbursing Agent on the Effective Date free and clear of all Claims, Liens and interests of Creditors and interests of equity security holders in accordance with Bankruptcy Code § 1141.  The Disbursing Agent will pay, or otherwise make distributions on account of all Allowed Claims against the Debtors in accordance with the terms of the Plan.

(c)    Distributions.

(i)    *Means of Payment*.  On each Distribution Date, the Disbursing Agent shall make distributions to the holders of Allowed Claims and Allowed Administrative Expenses as provided in the Plan in U.S. funds by check drawn on a domestic financial institution.

(ii)    *Means of Delivery.*  Distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Proof of Claim filed by such holder (or at the last known addresses of such holders if no Proof of Claim is filed or if the Disbursing Agent has been notified by the holder of the Allowed Claim of a change of address).  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then-current address, at which time all missed distributions, to

the extent provided under this Article, shall be made to such holder without interest.

Amounts in respect of undeliverable distributions made through the Disbursing Agent

shall be returned to the Disbursing Agent until such distributions are claimed.  All claims

for undeliverable distributions shall be made no more than 120 days after the Distribution

Date.  After such date, all unclaimed distributions shall revert to the Disbursing Agent for

distribution to Holders of Allowed Administrative Expenses as provided herein and the

Claim of any Holder with respect to such distribution shall be discharged and forever

barred.

(iii)  *Time Bar to Payments.*  Checks issued by the Disbursing Agent in respect of

Allowed Claims shall be null and void if not cashed within sixty (60) days after the date

of issuance.   Requests for reissuance of any check shall be made directly to the

Disbursing Agent by the holder of the Allowed Claim with respect to which such check

originally was issued.  Any claim in respect of such a voided check shall be made on or

before the later of 120 days after the date of issuance of such check.  After such date, all

claims in respect of voided checks shall be discharged and forever barred.

(iv)  *Fractional Cents.*  Notwithstanding any other provision of the Plan, no

payments or distributions under the Plan of or on account of fractions of cents will be

made.  When any payment or distribution of or on account of a fraction of a cent to any

Holder of an Allowed Claim would otherwise be required, the actual payment or

distribution made will reflect a rounding of such fraction to the nearest whole cent.

(v)  *Minimum Distribution.*  Notwithstanding anything to the contrary contained

herein, if the amount of Cash to be distributed to the Holder of an Allowed Claim is less

than $25 on a particular Distribution Date, the Disbursing Agent may hold the Cash

distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $25. Notwithstanding the preceding sentence, if the amount of Cash distribution to any Holder of an Allowed Claim never aggregates more than $25, then the Disbursing Agent shall not be required to distribute Cash to any such Holder.

(d)    <u>Settlement of Claims.</u>    The Debtors will be authorized to settle Disputed Claims, Actions, or disputes as to amounts owing to the Estates pursuant to and in accordance with the terms and provisions of this Plan, without first having to seek approval from the Bankruptcy Court.

6.3.    <u>Release of the Debtors' Claims, Rights, Demands and Causes of Action.</u>

Upon the occurrence of the Effective Date, the Debtors' Estates shall release any and all claims, rights, demands and causes of action of any kind or nature whatsoever held by, through, or on behalf of the Debtors and/or the Estates against any other Person, arising before the Effective Date that have not been fully released, resolved or disposed of prior to the Effective Date whether or not such claims or causes of action are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

6.4.    <u>Procedure for Determination of Claims.</u>

Except as to any Claim that has been Allowed prior to the Effective Date, the Debtors may object to the allowance of any Claim against the Debtors or seek estimation thereof on any grounds permitted by the Bankruptcy Code by continuing any claims objection process initiated by the Debtors pre-confirmation or by filing the appropriate pleading in the Bankruptcy Court at

any time prior to the first Business Day which is sixty (60) days after the Effective Date or such later date as may be established by the Bankruptcy Court upon notice and hearing.

     6.5.   Treatment of Disputed and Contingent Claims.

     (a)   Disputed Claims.  No payments or other distributions will be made to Holders of Disputed Claims unless and until such Claims become Allowed Claims.  No distribution or payment shall be made to any Holder of an Allowed Claim who is also a potential defendant in any Action.  If a Claim is not an Allowed Claim on the Effective Date or when payment is otherwise due under the Plan, payment of the Claim will be made on the Distribution Date after which the Claim becomes an Allowed Claim or on such earlier date as the Disbursing Agent deems appropriate.  At the time of any payments or other distributions to Holders of Allowed Claims in any Class or Allowed Unclassified Claims , an amount sufficient to have paid each Holder of a Disputed Claim in such Class or category of Unclassified Claim, as the case may be, their Pro Rata share of such Distribution, calculated as though such Disputed Claim were an Allowed Claim, shall be reserved for the potential benefit of the Holder of the Disputed Claim and, thereafter, distributed as set forth above; but in the event that a Creditor asserts duplicative, overlapping, or multiple Claims, the total amount reserved shall not exceed the total amount subject to distribution to such Creditor on account of such Claims.  Further, to the extent necessary to insure that the amount reserved for a Disputed Claim is sufficient, any amount held or reserved on account of one Claim of a Creditor shall also be deemed to be held or reserved for all Claims of that Creditor.  Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed by the Disbursing Agent, a Creditor who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s)

will not receive a Distribution, nor accrue interest thereon, until such dispute is resolved by settlement or Final Order.

(b)    Contingent Claims.    Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan.  The Holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

6.6.    Dissolution of Debtors.

After entry of the Final Decree, the Debtors shall be deemed dissolved pursuant to New Jersey law and by authority of the Confirmation Order confirming the Plan.  As of the entry of the Final Decree, the existing members, officers and directors of the Debtors shall cease to serve in their current capacities. The Debtors shall prepare and cause to be prepared and filed on behalf of the Debtors a certificate of Dissolution with the New Jersey Secretary of State in accordance with statutorily prescribed provisions, if any.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS

7.1.    Rejection of Executory Contracts.

All Executory Contracts not otherwise heretofore assumed by the Debtors will be rejected as of the Confirmation Date.

7.2.    Rejection Claims Bar Date.

Every Claim asserted by a Creditor arising from the rejection of an Executory Contract by this Plan must be filed with the Bankruptcy Court no later than the first Business Day which is thirty (30) days after the Effective Date; provided, however, that nothing contained herein or

in the Plan shall be deemed or construed as an extension of the date by which a Creditor whose Executory Contract was rejected by prior order of the Bankruptcy Court had to file proofs of claim arising from the Debtors' rejection of such Executory Contract.  Every such Claim that is timely filed will be treated under the Plan as a Class 3 General Unsecured Claim, except that, to the extent such Creditor received a pre-petition security deposit or Lien, such Creditor shall be required to apply said security towards their Claim.  However, nothing herein shall be construed as the Debtors' waiver or acquiescence to the allowance of such claim.  The Debtors specifically preserves all of their rights and defenses to all such Claims, as well as the application of any such security deposit or Lien.  Every such Claim that is not timely filed by the deadline stated above will be forever barred, unenforceable and discharged, and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

## ARTICLE VIII

## <u>MODIFICATION OF THE PLAN</u>

To enforce the provisions of this Plan, this Plan may be modified by the Debtors or Disbursing Agent from time to time in accordance with, and pursuant to, Bankruptcy Code § 1127 to cover unanticipated events.  The Plan may be modified by the Debtors at any time before the Effective Date, provided that the Plan, as modified, meets the requirements of Bankruptcy Code §§ 1122 and 1123, and the Debtors has complied with Bankruptcy Code § 1125.

4074512.1

# ARTICLE IX

## CONDITIONS TO EFFECTIVE DATE

9.1.    <u>Conditions to Occurrence of Effective Date.</u>

Each and all of the following are conditions to the Plan becoming effective, and must be satisfied fully or waived by the Debtors:

(a)    the Confirmation Order has been entered by the Bankruptcy Court and has not been stayed,

(b)    the Unsecured Creditors Fund has been established, and

(c)    the Disbursing Agent has been appointed.

# ARTICLE X

## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

(a)    <u>In General.</u>    The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Disbursing Agent or any other party-in-interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Professional Compensation Claims.

(b)    <u>Plan Disputes and Enforcement.</u>  The Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provisions of the Plan.  The Bankruptcy Court also will retain jurisdiction to enforce any provisions of the Plan

4074512.1

and any and all documents relating to the Plan.  The Bankruptcy Court also will retain jurisdiction over any matter relating to the implementation and/or consummation of the Plan.

(c)    <u>Further Orders.</u>  The Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan and any provision thereof.  In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment or satisfaction of any Claim, or any portion thereof, pursuant to the Plan.

(d)    <u>Sale of Assets.</u>  The Bankruptcy Court will retain jurisdiction to authorize, approve and enforce any sales of the Debtors' Assets free and clear of all Liens, claims, interests, or encumbrances in accordance with the terms of the Plan.

(e)    <u>Governmental Units or Regulatory Agencies.</u>  The Bankruptcy Court will retain jurisdiction to adjudicate any dispute or to hear and determine any action taken, proposed or threatened by any state, federal or local governmental regulatory agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtors, the Net Sale Proceeds or the Unsecured Creditor Fund.

(f)    <u>Final Decree.</u>  The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Chapter 11  Cases.

(g)    <u>Appeals.</u>  In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and to the extent  the Confirmation Order has not been stayed, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to consummate the Plan,

(h)   <u>Executory Contracts.</u>   The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding the determination of a contract as an Executory Contract, assumption or rejection of any Executory Contracts and any and all Claims arising therefrom.

(i)   <u>Claims and Causes of Action.</u>   The Bankruptcy Court will retain jurisdiction: (a) to hear and determine any claim or cause of action arising in or related to the Chapter 11 Cases; and (b) to adjudicate any causes of action or other proceedings currently pending or which may be commenced by the Debtors after the Effective Date or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of any Actions and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Cases and which the Debtors may commence and prosecute in support of implementation of the Plan.

## ARTICLE XI

## <u>GENERAL PROVISIONS</u>

11.1.   <u>Extension of Payment Dates.</u>

If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day,

11.2.   <u>Notices.</u>

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first class mail, hand-delivery, facsimile or e-mail.

11.3.   <u>Closing of Cases.</u>

At such time as the Debtors' Estates have been fully administered (i.e., when all things requiring action by the Disbursing Agent have been done, and the Plan has been substantially

4074512.1

consummated) and in all events within sixty (60) days after the Final Distribution Date, the

Disbursing Agent will file an application for the Final Decree showing that the Debtors' Estates

have been fully administered.  The application for the Final Decree shall be made upon notice to

the United States Trustee, after which an order approving the final report may be entered.  None

of the filings contemplated in this paragraph, however, shall in any way delay the Disbursing

Agent's ability to request entry of the Final Decree by the Bankruptcy Court.

11.4.   Interest.

Whenever interest is to be computed under the Plan, interest will be simple interest and

not compounded.  Unless otherwise specifically provided for in the Plan or the Confirmation

Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim will

be entitled to interest accruing on or after the Petition Date on any Claim.

11.5.   Confirmation by Non-Acceptance Method.

The Debtors hereby requests, if necessary, confirmation of the Plan pursuant to

Bankruptcy Code § 1129(b) with respect to any impaired Class of Claims which does not vote to

accept the Plan.

11.6.   Vesting.

As of the Effective Date, the Disbursing Agent will be vested with all property of the

Debtors and the Estates, free and clear of all Claims, Liens, security interests, assignments,

encumbrances, charges and other interests of Creditors, except as otherwise provided in the Plan.

11.7.   Severability.

If the Bankruptcy Court determines, before or after the Confirmation Date, that any

provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or

unenforceable with respect to the Holder or Holders of such Claims as to which the provision is

26

determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of the Plan.

11.8.   Governing Law.

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of thereof.

11.9.   Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims or Interests prior to the Effective Date.

11.10.  Revocation or Withdrawal

The Plan may be revoked or withdrawn by the Debtors prior to the Confirmation Date.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in an further proceedings involving the Debtors.

11.11.  Injunction

Except as otherwise expressly provided in the Plan, all Entities who have held, hold or may hold Claims or Interests shall be permanently enjoined by the Confirmation Order, from and

27

after the Effective Date, from:  (i) commencing or continuing in any manner any action or other

proceeding of any kind on any such Claim or Interest against the Debtors, the Bankruptcy Estate,

or the Released Parties; (ii) the enforcement, attachment, collection or recovery by any manner

or means of any judgment, award, decree or order against the Debtors, the Bankruptcy Estate, or

the Released Parties; (iii) creating, perfecting, or enforcing any encumbrance of any kind against

the Debtors, the Bankruptcy Estate, or the Released Parties; and (iv) asserting any right of setoff,

subrogation or recoupment of any kind against any obligation due from the Debtors the

Bankruptcy Estate or the Released Parties, the Debtors, with respect to any such Claim or

Interest.

11.12.  <u>Discharge.</u>

As provided in Bankruptcy Code § 1141(d)(3), the Plan does not grant the Debtors a

discharge.  Notwithstanding the foregoing, except as otherwise provided herein, (1) the rights

afforded in the Plan and the treatment of all Claims and Equity Interests shall be in exchange for

and in complete satisfaction, discharge and release of such Claims and Equity Interests of any

nature whatsoever, including any interest accrued on such Claims from and after the Petition

Date, against the Debtors, or any of their Assets and (2) all Persons and Entities shall be

precluded from asserting against the Debtors, or any of their Assets or properties any other or

further Claims or Equity Interests based upon any act or omission, transaction or other activity of

any kind or nature that occurred before the Confirmation Date, except as otherwise provided in

the Plan.

11.13.  <u>Exculpation.</u>

To the extent set forth in this Section, neither the Debtors, their officers, directors or

members, nor any of the Chapter 11 Professionals (collectively, the "Released Persons") shall

have or incur any liability to any Holder of a Claim or Interest, or any other party-in-interest, or any of their respective' agents, employees, representatives, financial advisors, attorneys, affiliates or any of their successors or assigns, for any act or omission occurring before or after the Petition Date and in connection with, relating to, or arising out of (a) the Chapter 11 Cases, (b) property of the Debtors' Estates, (c) the formulation, negotiation or implementation of the Plan, (d) the solicitation of acceptances of the Plan, (e) the pursuit of Confirmation of the Plan, (f) any Claims dealt with by the Plan, (g) the consummation of the Plan, (h) the Confirmation of the Plan, (i) the administration of the Plan or (j) the property to be distributed under the Plan, except for their bad faith, willful malfeasance, reckless disregard of duty, gross negligence, willful fraud, willful misconduct, self-dealing or breach of fiduciary duty.  In all respects, the Debtors, and each of their respective members, officers, directors, trustees, employees, advisors and agents shall be entitled to rely upon advice of counsel with respect to their duties and responsibilities under the Plan.

11.14.  Successors and Assigns.

The rights and obligations of any Creditor referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors and personal representatives of such Creditor.

11.15.  Payment of Statutory Fees and Filing of Quarterly Reports.

All fees payable pursuant to 28 U.S.C. § 1930, along with any accrued interest thereon, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, pending entry of the Final Decree.  All post-confirmation quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.  The United States Trustee will

4074512.1

continue to be paid by the Disbursing Agent until entry of the final order or decree, or upon

conversion or dismissal of the Bankruptcy Cases.

Respectfully submitted,

CECERE ASSOCIATES, L.L.C. AND
CECERE REALTY ASSOC., LLC

By:  /s/ Michael Cecere

Dated:  September 20, 2010

30